# E. R. Dickerson and C. A. Cantrall, Trustee, Appellees, v. James A. Goodrich and Mary J. Brya, Appellants.

1. WATERS AND WATER COURSES, § 4*—*duty of owners along streams.* The owners of land along a stream must use the same so as not to injure the land of others both as regards to surface and overflow waters.

2. WATERS AND WATER COURSES, § 15*—*when owners along stream not entitled to build or maintain levee.* Owners of land along a stream have no right to build or maintain a levee on their land where by doing so the current of the stream during high waters will be diverted across the land of others.

3. WATERS AND WATER COURSES, § 22*—*admissibility of evidence.* On bill to restrain owners of land along a stream from erecting and maintaining a levee on their land so as to divert the overflow waters

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

upon the lands of complainants, evidence with reference to an over-flow at the time of a high water, and with reference to the effect of the levee upon the flow of the water after the levy was erected down to the time of the trial, *held* admissible.

Appeal from the Circuit Court of Christian county; the Hon. James C. McBride, Judge, presiding. Heard in this court at the October term, 1913. Affirmed. Opinion filed October 16, 1914.

F. P. Drennan, for appellants.

Provine & Provine and W. B. McBride, for appellees.

Mr. Justice Scholfield delivered the opinion of the court.

This was a bill for injunction filed in the Circuit Court of Christian county by appellees to restrain appellant's from erecting and maintaining a levee on appellants' land and to tear down that portion of said levee already built. The bill alleges, in substance, that Dickerson is the owner of the northwest quarter (¼) of the southeast quarter (¼) and C. A. Cantrall as trustee, etc., is the owner of the east half (½) of the southwest quarter (¼) of section twenty-five in township sixteen (16) north, range two (2) west of the third principal meridian, in Sangamon county, Illinois, lying north and west of, contiguous to the north fork of the Sangamon River, and which are bottom lands of great value; that Goodrich owns large tracts of land lying south of, adjacent to and near said river, among which are the south half (½) of the southeast quarter (¼) and the northeast quarter (¼) of the southeast quarter (¼) of said section twenty-five (25) in the same township in Christian county, Illinois, which are also bottom lands, and that said Goodrich's lands lie on a lower level than the lands of appellee's, and that the lands of appellees are the dominant and the lands of said Goodrich the servient estate, with regard to the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

natural flow of the surface water; that the said stream in times of high water overflows its banks and spreads out over the surface of the lands of the said Goodrich, and is carried by depressions and channels southeasterly and thence southwesterly from said stream, emptying into a lake which empties into Mosquito Creek; and that said Goodrich and Byra to reclaim their lands propose to construct a levee of the height of two and one-half to fourteen feet on said Goodrich's land, beginning at the center of the east line of said section twenty-five, and running thence west, following the course of said stream eighty rods, to the half quarter section line, running north and south through the center of said section, and thence south, to connect with the old levee on said Goodrich's land, a distance of something over eighty rods, and that the building and maintaining of said levee will arrest or stop the flow of surface water in time of high water flowing down said stream, and preventing the same or the overflow water from flowing where, in a state of nature, they are wont and accustomed to flow, and will throw such surface water and overflow water back upon the lands of appellees, and will render such lands at such times unfit for cultivation, and will greatly injure appellees' lands and cause them irreparable damages, and also that the effect in course of time will be to cut a new channel for said stream across the lands of appellees, or some of them, etc.

The appellants by their answer admit that Goodrich is the owner of the lands above described, together with other lands lying adjoining the same, and admit that the above described lands of said Goodrich are overflow lands, but deny that they lie on a lower level than the lands of appellees, but aver that the lands of said Goodrich are the dominant and the lands of appellee the servient estate, in regard to the natural flow of surface water, and admit that they are about to build the levee above described, and have commenced to build and erect same, and have now completed the

same from the center of the east line of said section, west a distance of about eighty rods, and thence south, a distance of about sixty rods, and intend to eventually extend the same to meet the old levee above mentioned; but aver that they have a right to so construct and maintain said levee, and that it will not damage appellees, as alleged in said bill, and will not cause them irreparable injury, etc.

The lands are bottom lands and subject to overflow from the north fork of the Sangamon River. The river swings in a southwesterly direction north of the lands of appellant Goodrich until it reaches the northwest corner of his land, when it proceeds practically directly south along the quarter section line between his land and appellee Dickerson's land, and then turns and proceeds west practically across the south side of appellee Dickerson's lands, and then turns and runs north along the west side of appellee Dickerson's land.

The evidence shows that the overflow waters of the river north of Goodrich's land originally followed a more or less well-marked channel across his land and emptied into a lake south thereof. During the winter of 1912 appellants built a levee across the north portion of Goodrich's land and partly down the west side thereof. This levee runs directly across what is known as the old channel and across all other depressions in said tract on the north side running south, thereby diverting the overflow waters of the river from Goodrich's land westward into the channel of the river. Appellant's claim that this caused the waters to break through the bank of the river at the northeast corner of Dickerson's land and flow southwesterly across his land forming a new channel.

Appellant concedes that there is no distinction between surface water, and overflow waters and running waters in regard in the right of dominant and servient owners, and that overflow waters of running streams are treated as surface waters. It is also conceded by appellants that the levee in flood time will cause the

water to run higher on appellees' land, but insists that such fact will not damage them or render them unfit for cultivation.

Appellants insist that in the interest of good husbandry they have a right to maintain this levee and prevent surface water from spreading out over their lands, and cause it to run in the natural waterway where it is wont to flow when the river is not out of its banks, even though the levee might cause the overflow water to be deeper at times on the Dickerson and Cantrall lands than it would be were it not for such levee.

This is true providing the construction of the levee did not cause injury to the lands of others. The evidence in the case tends to show that during the high water in March, 1913, the current of the river was diverted across appellees' lands, and at the northeast corner of the Dickerson land, where the current first struck by reason of the diversion caused by the building of the levee in question, there was a large place washed out in his land and several large trees washed down, and after the flood went down there was a well-marked line of demarcation showing where the current had been washing out the corn stalks and weeds and in some places taking part of the earth with it, showing that there was a new current created which had never been in existence before. This high water was the first that occurred after appellants commenced the construction of the levee, and was not an extraordinary high water.

It is apparent from the evidence that the levee if permitted to stand would cut a new channel across the Dickerson forty acres and the Cantrall land west of same. The owners of land along a stream must use them so as not to injure the land of others both as regards to surface and overflow water. *Pinkstaff v. Steffy*, 216 Ill. 406.

Objections were made to the admission of evidence in regard to the overflow in the spring of 1913. This evidence was competent, and it was proper to prove

the effect of the levee upon the flow of the water after the levee was erected down to the time of the trial. *Suehr v. Chicago Sanitary Dist.*, 242 Ill. 496. The decree was right and will be affirmed.

*Affirmed.*