(No. 11248.—Decree affirmed.)

PIERCE CAREY *et al.* Appellants, *vs.* CLARENCE WHITE *et al.* Appellees.

*Opinion filed April 19, 1917—Rehearing denied June 8, 1917.*

DRAINAGE—*what contract for construction of a drain by mutual agreement is not in violation of the act of June 4, 1889.* The act of June 4, 1889, providing that when a drain is constructed by mutual agreement it shall be unlawful for any of the parties thereto to permit a connection with the drain without the consent of all the parties, is merely intended to protect parties who have made no other agreement, and does not prohibit the making of an original contract by all the parties interested, authorizing certain of their number, for reasons deemed sufficient, to make their own terms for connection by other land owners with the main or lateral drains.

APPEAL from the Circuit Court of Will county; the Hon. A. W. DESELM, Judge, presiding.

T. F. DONOVAN, and J. A. BRAY, (J. L. O'DONNELL, of counsel,) for appellants.

S. J. DREW, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Will county dissolving a temporary injunction and dismissing a bill filed by the appellants against the appellees to prevent the construction of a tile ditch which would empty into a joint tile ditch owned by the appellants and the appellee

Clarence White, by virtue of permission granted by White to other appellees, which was alleged to have been in violation of the act of June 4, 1889, concerning legal drains then or thereafter constructed by mutual license, consent or agreement. (Laws of 1889, p. 116.)

The complainants were the administrator and heirs-at-law of Thomas Carey, deceased, and by their amended bill they alleged that Thomas Carey in his lifetime was the owner of lands therein described; that on September 20, 1911, he and other owners of lands and the commissioners of highways of the town of Florence entered into a contract in writing for the construction of a main tile ditch for the sole use and benefit of the lands owned by the parties to the contract and the public highways running through, along or between the same; that there were lands owned by other persons which naturally drained into said main tile ditch, the owners of which were not then ready and willing to join in the system of drainage but it was believed it would be found expedient by such owners to join in the system of drainage in the future, and therefore it was provided that Clarence E. White, Thomas Carey, James Maher, Catherine Long and Mary Barrett, who had paid more than their equitable share toward the construction of the main tile drain, might any of them allow the commissioners of highways of the town of Florence or the owners of the other lands the natural drainage of which would be over the lands of White, Carey, Maher, Long or Barrett, to connect tile drains in their lands to the main tile drain so constructed or to any lateral drain or drains then laid or which might thereafter be laid on the lands then owned by White, Carey, Maher, Long or Barrett, and in the event any of them should exercise that privilege, the compensation that might be paid to any of them should be the property of the one who should allow such connection with the main or lateral drain upon his or her lands; that after the completion of the main tile drain Thomas

Carey and Clarence White entered into an arrangement be-
tween themselves and with Mary Barrett, Catherine Long
and Patrick J. Murphy to construct a tile drain for their
joint use and benefit emptying into the main tile ditch,
and said lateral tile drain was constructed across the lands
of Thomas Carey at his expense and across the lands of
Clarence White at his expense and the expense of Thomas
Carey; that it was then agreed between Clarence White
and Thomas Carey that in consideration of Thomas Carey
paying a larger portion of the cost than would equitably ·
fall to him for the construction of the joint tile drain, he
was to have the privilege of arranging with the commis-
sioners of highways and Charles White and Thomas Ken-
nedy, owners of adjoining lands, for draining into the
ditch, and that after the death of Thomas Carey, Clarence
White entered into an arrangement to permit the drainage
of a portion of the highway and an adjoining twenty-acre
tract of land into the lateral tile drain. The bill charged
that the permission so given was a violation of the con-
tract between Clarence White and Thomas Carey; that it
rendered the lateral drain less efficient in carrying off the
waters from the lands of complainants speedily and effect-
ively by reason of the extra quantity of water which would
be thrown into the same, and that the construction of the
additional tile ditch across the lands of Clarence White
would be a violation of sections 1, 2, 3 and 4 of the above
mentioned act of June 4, 1889.

There were seventeen owners of lands and the com-
missioners of highways of the town of Florence who exe-
cuted the original contract for the construction of the main
tile drain, and it specified the amounts to be severally paid
by them for its construction, with further agreements of
all the parties to haul a single tile along the line of the
ditch on their own lands and in the public highways, and
further provisions for the appointment of a committee and
mutual consent and agreement for the construction of the

tile drain across the lands of the respective parties. The contract, after reciting that the natural drainage of other tracts of land therein described was over and across lands then owned by Thomas Carey, and the natural drainage of other lands therein described was over and across the lands of Clarence White or Thomas Carey, and the natural drainage of another tract was across the lands owned by Mary Barrett and Catherine Long, contained the following agreement:

"And inasmuch as the said Maher, Carey, White and Mary Barrett and Catherine Long have agreed to pay more than their equitable share of the cost and expense of said tile drain so to be constructed as aforesaid, it is therefore mutually covenanted and agreed by and between the parties hereto that the said James Maher, Thomas Carey, Clarence E. White and Mary Barrett and Catherine Long, or each or either of them, if they deem it fit or advisable, allow the commissioners of highways of the town of Florence, or the owners of the said lands last aforesaid the natural drainage of which is over and across lands of said James Maher, Thomas Carey, Clarence E. White and Mary Barrett and Catherine Long, as aforesaid, to connect tile draining said lands last aforesaid to the main tile drain so to be constructed, or to any lateral drain or drains now laid or which may hereafter be laid on the lands now owned by the persons last above named and connected to the main tile drain on the said lands now owned by the said persons last above named, and in the event the said persons last above named, or either of them, see fit to exercise the privilege so granted to them as aforesaid, it is mutually covenanted and agreed by and between the parties hereto that the compensation, if any, which may be paid therefor to either of the persons last above named shall be the property of the one who may allow such connection with the main or lateral drain upon his or her said land as aforesaid. It is further mutually covenanted and agreed

by and between the parties hereto that the said main tile
drain, when so constructed, shall be for the sole use and
benefit of the property now owned by the respective par-
ties to this agreement and of the public highways running
north and south through, along or between said lands, all
as more fully firstly described herein; that each of the par-
ties hereto, for the purpose of draining their said respect-
ive lands hereinbefore described, may connect with said
main tile drain, as aforesaid, any lateral drains which they
may place upon any of their said respective lands herein-
before described; that neither of the parties hereto shall
close up any part of said main tile drain so to be con-
structed; that neither of the parties hereto shall allow any
other person or persons to use or connect any drain or
drains to any portion of said main tile drain as aforesaid,
or to use or connect to any lateral drain or drains as afore-
said, or to use or connect to any lateral drain or drains
emptying into said main tile drain without the consent in
writing of all parties hereto first had and obtained, saving
and reserving, however, to the said James Maher, Thomas
Carey, Clarence E. White and Mary Barrett and Cather-
ine Long the right hereinbefore granted them or either of
them, if they deem it fit or advisable, to allow tile drain-
ing certain property hereinbefore described to be connected
to the main tile drain so to be constructed, or to lateral
drains now laid on the lands now owned by said persons
last above named or which may hereafter be laid on the
lands now owned by the said persons last above named;
that the respective parties hereto do hereby give and grant,
each to the other, a joint interest in and to said main tile
drain and a perpetual user and right of way in and to said
main tile drain."

The defendants by their answer admitted the making
of the contract but denied that Thomas Carey paid more
than his equitable share toward the construction of the
main ditch, and claimed that by the agreement White had

a right to permit the construction of the proposed tile drain and to agree upon the compensation to be paid to him for the privilege. They alleged that the drain was of sufficient size and capacity to carry away the water from the highway and the lands mentioned in the bill of complaint, and denied that the proposed construction was in contravention of any law of the State.

No agreement other than the one above set forth concerning connection with the lateral drain was proved at the hearing, and it was proved that Thomas Carey had given permission to Lansing Jackson, without the consent of Clarence White, to make connection with the tile drain for the drainage of lands of Jackson, for which he was paid $60, and the connection was made, and that he negotiated for another connection, but it was not made on account of a disagreement on the amount to be paid him. It is conceded by counsel for appellants that if their claim of a violation of the statute is sustained, the consent of Thomas Carey to Jackson to connect Jackson's land to the tile drain did not give any right to make the connection and that Jackson may be compelled to close up the drain. The question to be determined is whether the act of June 4, 1889, prohibits the making of such a contract as was made in this case and renders the contract void. That act provides that whenever any ditch or drain, either open or covered, is constructed by mutual license, consent or agreement, it shall be unlawful for either of the parties interested in the drain to authorize any other person or persons to connect therewith without the consent of all the parties interested in the drain; that all drains connecting therewith without such permission shall be unlawful, and any person interested may, by bill in chancery, compel the person or persons constructing such unlawful drain to fill the same up and in addition have a right of action for all damages occasioned thereby, and that the license, consent or agreement of the parties need not be in writing but shall be as valid and bind-

ing if in parol as if in writing and may be inferred from the acquiescence of the parties in the construction of such drain. The only ground upon which the relief prayed for could be granted would be that the parties interested have no right to make a contract differing from the statute. But the statute is not prohibitory in its nature. It not only contemplates a license, consent or agreement for a connection although the license, consent or agreement is by parol, but declares that it may be inferred from the acquiescence of the parties in the construction of the drain, so that its evident purpose is to protect parties who have not made any different agreement. The fact that the license, consent or agreement was given in the contract before the drain was constructed is of no importance and furnishes no ground for saying that it was void because of the time when it was given. The parties all acquiesced in the connection made by Jackson, and by the express terms of the statute that connection was lawful.

It was a disputed question at the hearing whether the proposed connection would injuriously affect the lateral drain by bringing into it more water than it could conveniently carry, but if such was the fact it would not justify nullifying or setting aside the agreement, by which either of the parties was permitted to allow connection with the drain to the owners of particular lands described therein and to receive the compensation therefor. If the agreement was improvident it was made with a full understanding of the situation and the lands that might be connected with the drain. The courts cannot relieve against contracts because they are unwise.

The decree is affirmed.                    *Decree affirmed.*