(No. 12894.—Decree affirmed.)

MARCELLA ADAMS *et al.* Appellees, *vs.* W. C. ABEL *et al.* Appellants.

*Opinion filed December 17, 1919.*

1. APPEALS AND ERRORS—*when existence of perpetual easement is involved in drainage suit.* In a suit for injunction to restrain the owner of a dominant tract from connecting a tile drain on his land with a drain established upon an adjacent lower tract the existence of a perpetual easement is in question, and an appeal may be taken directly to the Supreme Court on the ground that a freehold interest is involved.

2. DRAINAGE—*Drainage act of 1889 does not restrict drainage rights at common law.* The Drainage act of 1889, (Hurd's Stat. 1917, p. 1151,) regarding the establishing of drains between adjoining or adjacent lands for mutual benefit, does not restrict or abridge the rights of drainage as they exist at common law but its effect is to enlarge those rights.

3. SAME—*the owner of a dominant tract is entitled to have surface water pass off over servient lands.* The owner of a dominant heritage has the right to have the surface water coming naturally upon his premises pass off over the servient lands, and he may by open ditch or tile drain constructed to the limits of his land drain it into the natural and usual channel, even though the quantity of water thrown upon the servient heritage is thus increased.

4. SAME—*when a tile drain cannot be connected with original drain on lower tract.* The right of an owner of land to connect a tile drain on his land with a drain constructed for mutual benefit on adjacent lands by an agreement to which his grantor was not

a party is governed by the provisions of the Drainage act of 1889, (Hurd's Stat. 1917, p. 1151,) and under that act such connection cannot be made without the consent of all the parties to the original agreement or their subsequent grantees.

5. SAME—*when mandatory injunction is proper to remove unlawful connection with tile drain.* Where a land owner has connected his tile drain with another drain on an adjoining lower tract in violation of the Drainage act of 1889 a bill for a mandatory injunction is the proper remedy, and it is sufficient if it alleges title to the property, the construction of the original drain under mutual agreement, lack of capacity to carry the increased water from the additional drain, the failure to secure permission for the connection, and the resulting damage.

APPEAL from the Circuit Court of Christian county; the Hon. THOMAS M. JETT, Judge, presiding.

R. C. NEFF, for appellants.

WALTER M. PROVINE, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellees filed a bill in the circuit court of Christian county to enjoin appellants from making connection with a closed tile drain which extended from appellants' land into and across appellees' land, and, if such connection had already been made, to require it to be removed. The bill further alleged that the present tile drain, as theretofore constructed, was not of sufficient capacity to carry the increased water from the added land, and that irreparable injury would be done to appellees' property if such connection were permitted. A decree was entered in the circuit court granting the injunction as prayed. From that decree an appeal was taken to the Appellate Court, and that court transferred the cause to this court on the ground that the validity of a statute was involved.

The record shows that appellees hold the legal title to the east half of the southwest quarter and the west half of the southeast quarter of a certain section 18 in said county; that in 1889 J. W. Murphy, who owned the northeast quar-

290—32

ter of section 18, and the ancestor of appellees, entered into an agreement (the record does not show whether written or oral) for the laying of a covered drain from the south half of the northeast quarter into and across, in a southwesterly direction, the land owned by appellees in the south half of section 18; that at that time the west half of the west half of section 17 adjoining section 18 was owned by persons other than the ancestor of appellees or Murphy, and that the agreement in question was made for this tile drain to affect only the property owned by Murphy and the ancestor of appellees; that said agreement was to drain the land of Murphy in the northeast quarter of section 18 and the property of appellees' ancestor in the south half of section 18 and no other; that the tile drain has been maintained and used by the owners of these properties, and those succeeding to their respective titles, since that date and for no other land. The record further shows that appellants, W. C. Abel and his wife, are the owners of the northeast quarter of section 18, formerly owned by Murphy, and also of the southwest quarter of the northwest quarter and the west half of the southwest quarter of section 17; that Abel had laid a drain to extend from his property in section 17 onto section 18, and had connected said tile drain with the drain constructed by Murphy and the owners of the south half of section 18 without the consent of the owners of the tile drain as originally constructed; that he had requested permission from the owners of said land to so connect but had been refused by appellees, and he was told not to interfere with the tile in section 18 or to drain thereby any portion of his land except the eighty acres in section 18 which he had purchased from Murphy, with whom the original agreement was made for the original tile drain. The record further shows that the original drain was of insufficient capacity to take care of the additional water coming from the tile drain so constructed by appellants; that all the lands involved in this proceeding are level prairie lands in a high

state of cultivation, and that irreparable injury to appellees' growing crops would be caused if the original drain were required to be subjected to the increased flow of water from section 17, which would result from connecting the drain on section 17 with the old tile drain on section 18. There is no question in the record as to the present ownership of the lands or as to how the different parties received title thereto.

The questions involved require the construction of the Drainage act of 1889, (Laws of 1889, p. 116,) which provides, among other things, as follows:

"Sec. 1. Whenever any ditch or drain, either open or covered, has been heretofore or shall be hereafter constructed by mutual license, consent or agreement of the owner or owners of adjoining or adjacent lands, either separately or jointly, so as to make a continuous line upon, over or across the lands of said several owners, or where the owner or owners of adjoining or adjacent lands shall hereafter by mutual license, consent or agreement, be permitted to connect a drain with another already so constructed, or where the owner or owners of the lower lands has heretofore or shall hereafter connect a drain to a drain constructed by the owner or owners of the upper lands, then such drains shall be held to be a drain for the mutual benefit of all the lands so interested therein.

"Sec. 2. It shall not be lawful for either of the parties interested in said drain to authorize any other person or persons to connect therewith without the consent of all the parties interested in said drain, and all drains connecting therewith without such permission shall be unlawful, and any person interested, may by bill in chancery, compel the person or persons constructing such unlawful drain to fill the same up and in addition may have a right of action for all damages occasioned thereby."

Section 3 of said act provides against filling up drains or obstructing the flow of water therein without the con-

sent of all the parties. Section 4 provides that after one year from the time the agreement is made, if no revocation is made or suit commenced, further right of revoking the license is barred.

We do not understand from the arguments presented by counsel that either counsel questioned the constitutionality of this statute. They only differed, and now differ, as to the construction that should be placed upon it as applied to the facts in this record. But there can be no question that this record involved the existence or non-existence of a perpetual easement in the lands here under consideration, that said easement is a freehold interest, and that therefore the cause was rightly transferred to this court from the Appellate Court. *Funston* v. *Hoffman,* 232 Ill. 360; *Dorman* v. *Droll,* 215 id. 262.

The facts in this record tend to show that the drain in question had been constructed by appellants from certain lands into section 17 so as to connect with the original drain, and that the original drain did not have sufficient capacity to take the increased flow of water and that the crops and land of appellees had been thereby greatly injured and damaged. The evidence tends to show that there is no well defined channel for surface waters across the land of appellees in any direction. There is some evidence tending to show that there is somewhat of a depression across the lands in section 18 in a southerly direction and that some of the surface waters from the lands in question in section 17 sometimes run in a southerly direction across appellees' land in section 18, but it is clear from the great weight of the evidence that this depression, if any, is very slight.

The conclusion is necessarily drawn from this record that the original tile drain in section 18, whether intended or not intended to be constructed under the provisions of the Drainage act of 1889, must be held to be controlled by the provisions of said act. This court has frequently held that said statute does not restrict or abridge the rights of

drainage as they exist at common law; that its sole purpose and effect were to enlarge those rights. (*Wilson* v. *Bondurant,* 142 Ill. 645; *Ribordy* v. *Murray,* 177 id. 134; *Cox* v. *Deverick,* 272 id. 46.) There can be no question that under the law of this State the owner of a dominant heritage or higher tract of land has the right to have the surface water falling or coming naturally upon his premises pass off the same upon or over the lower or servient lands, and the owner of the dominant heritage may by ditches or drains drain his own land into the natural and usual channel, even if the quantity of water thrown upon the servient heritage is thus increased. (*Peck* v. *Harrington,* 109 Ill. 611; *Wilson* v. *Bondurant, supra; Pinkstaff* v. *Steffy,* 216 Ill. 406; *Broadwell Drainage District* v. *Lawrence,* 231 id. 86.) And this drainage·may be through a natural depression to the limits of his land in any manner he may elect, whether by open ditch or tile drain. (*Dorman* v. *Droll, supra.*) But that rule of law, in our judgment, does not settle the question here. That question is whether appellants have the right to extend a tile drain from their land so as to connect with appellees' tile drain, such original tile drain having been made under an agreement by the former owners of adjoining lands prior to the law of 1889, in which agreement the remote grantor of appellants then owning the land in question in section 17 failed to join. The testimony tends to show that the land in section 17 sought to be drained is, part of it, a pond or swale covering three or four acres; that as a matter of fact there is not much natural drainage of the surface water at that point; that it requires heavy rains to run the water over the rim of the pond or swale, and at such times some of the water does pass from this property in such a way as to reach the tile drain on appellees' land while some of the surface water flows in the opposite direction. The evidence shows, without contradiction, that the original tile drain was only sufficient to drain the lands that it was constructed to drain but not the

additional land here sought to be drained by the new tile drain from appellants' land connecting therewith. It is clear from this record that the original owners of the land in section 18 did not intend to have other adjacent lands drained into the original tile drain when it was constructed, and this court has held that under the provisions of the act of 1889 it is unlawful for any of the parties thereto to permit a connection with a drain so constructed without the consent of all the parties. (*Carey* v. *White,* 278 Ill. 474.) If the one who owned the land in section 17 at the time the original drain was constructed still owned said land, there can be no question, under the letter and spirit of the Drainage act of 1889, that he would not now be permitted to construct a drain from his land in section 17 and connect it with the original tile drain without the consent of the ones interested in the original drain. That being so, the conclusion necessarily follows that the grantee of the original owner, or any subsequent grantee of the land in section 17, could not so construct the drain without violating the act of 1889. To hold otherwise would be most unjust and inequitable and practically defeat the real purpose of said act.

Counsel for appellants further argues that the bill for injunction did not contain all the elements to entitle the appellees to the relief prayed. The bill alleged title to the property, construction of a drain under the mutual agreement, lack of capacity to carry the increased water which would be carried by the added drain, the failure of appellants to secure the required consent, and the resulting damage. Under the provisions of the statute in question as construed by this court, we think the decree allowing the mandatory injunction was proper. *Wilson* v. *Bondurant, supra; Hunt* v. *Sain,* 181 Ill. 372.

The decree of the circuit court will be affirmed.

*Decree affirmed.*