# ANDREW J. LANEY

## v.

## RANDOLPH JASPER.

1. INJUNCTION—*of the remedy to prevent or abate a nuisance.* A court of chancery will sometimes relieve by injunction, though a suit at law may be maintained for the injury.

2. But to authorize the intervention of a court of chancery, by way of injunction, to prevent or abate a nuisance, as in leading the surface water upon the land of another, there must be such an injury as, from its nature, is not susceptible of being adequately compensated by damages at law, or such as, from its continuance or permanent mischief, must occasion a constantly recurring grievance, not capable of being adequately compensated in damages, and which cannot be otherwise prevented but by an injunction.

3. Therefore, a mere diminution of the value of property by the nuisance, without irreparable mischief, will not furnish any foundation for equitable relief.

4. One of the most usual cases for this remedial interposition of a court of equity is, the obstruction of water-courses; and another is, the diversion of streams of water from mills.

5. But where a person, by means of a ditch dug upon his own land, throws the surface water upon adjacent land of another, at a place other than that where it would have been carried by the natural depression in the ground, there being no natural water-course, however, which is thereby diverted, the doctrine as to injunctions in cases of obstructing water-courses has no application, the remedy for injury resulting from such diversion of the surface water being complete at law.

6. In this case, a party, by digging a ditch upon his own land, and running furrows upon the land of an adjacent proprietor, with the consent of the latter, diverted the surface water from where it would have been carried by a natural outlet for it, and lead it from his own land upon such adjacent land, thereby forming a gully upon the latter tract, which, being arable land, there was thereby a constantly recurring obstruction to its convenient cultivation; it was held that a subsequent purchaser of the land upon which the water was so thrown could not have his remedy in chancery by injunction, to abate the nuisance, if it were one, and to prevent its recurrence, because the injury was not of that irreparable character which could not be compensated in damages at law.

7. PURCHASERS OF LAND—*hold subject to previously existing burdens.* Where the owner of land, by ditching it, throws the surface water upon the land of an adjoining proprietor with his consent, or upon congress land, it seems a subse-

quent purchaser of the land 'so affected has no ground of complaint on that account; acquiring the land with a knowledge of the existence of the ditch, and of its effect upon his intended purchase, he will take it with all its drawbacks and inconveniences.

WRIT OF ERROR to the Circuit Court of Washington county; the Hon. H. K. S. O'MELVENY, Judge, presiding.

The opinion of the Court contains a sufficient statement of the case.

The application of the authorities cited by counsel will be understood from the following brief summary of the facts : A bill in chancery was filed to abate and prevent the recurrence of an alleged nuisance, and to recover damages already occasioned thereby. It seems from the pleadings and proofs in the case, that the defendant, being the owner of a tract of land, by digging a ditch upon his own land, and running furrows upon the land of an adjacent proprietor, with his consent, turned the surface water from his own land upon such adjacent land at another point than that at which it would have been carried off by a natural depression in the ground, and thereby a gully was formed upon the adjacent land, and, being arable land, there was thereby a constantly recurring obstruction to its convenient cultivation. With a full knowledge of the existence of this ditch, and of its effect upon the land, the complainant purchased the tract upon which the defendant had so diverted the surface water from his own. This is the alleged nuisance for which remedy is sought by the bill.

The court below dismissed the bill, and the complainant thereupon sued out this writ of error.

Mr. AMOS WATTS, for the plaintiff in error.

The injury complained of is such that from its continuance the mischief is permanent, constantly recurring, and cannot be otherwise prevented than by injunction. In such cases relief will be granted. 2 Story's Eq. 238, §§ 925, 926 and 927; 2

Hilliard on Torts, 94, note *a*;. *City of New York* v. *Mapes et al.* 6 Johns. Ch. 46; *The Mohawk & H. R. R. Co.* v. *Artcher et al.* 6 Paige-Ch. 83.

Obstructing and diverting a water-course is such a permanent and constantly recurring injury. 2 Story's Eq. 328, §§ 925, 926 and 927; 2 Hilliard on Torts, 94, note *a*, last clause; Angell on Water-Courses, p. 20, § 4.

Plaintiff will not be required to establish his right by a suit at law before chancery will grant an injunction. *White* v. *Forbes*, Walker's Ch. 112; *Gardner* v. *Village of Newburgh*, 2 Johns. Ch. 161; *Robeson & Maxwell* v. *Pettinger*, 1 Green's Ch. 57.

Chancery will grant relief by injunction although the party defendant may have been sued at law for the injury. *The Mohawk & H. R. R. Co.* v. *Artcher et al.* 6 Paige Ch. 83.


Messrs. LECOMPTE & STOKER, for the defendant in error.


The act charged in the bill to have been done by the defendant upon the complainant's land, was not done on the land of the latter, but upon the defendant's own land, and on land belonging to a third person, and by his consent, long before the complainant purchased. The act of defendant, if one of which any one can complain, was a tort to the then owners and not transferable to the subsequent purchaser, the present complainant.

The injury must be irreparable, not susceptible of computation in damages at law, or an injunction will not lie; in this case damages are fixed by the evidence at $200 by several witnesses. Adams' Eq. p. 210, note 1, and authorities there cited.

For a private nuisance the remedy is by action at law. Adams' Eq. p. 211, note 1; 2 Hilliard on Torts, pp. 92, 93.

Until it is discovered by action at law that the injury is continuing and irreparable, and not susceptible of compensation, an injunction to abate a private nuisance or injury will not

lie. Adams' Eq. p. 211, and note 1 ; *Simpson* v. *Justice*, 8 Ired. 29, 115.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was a bill in chancery in the Washington Circuit Court for an injunction exhibited by Andrew J. Laney against Rudolph Jasper.

The bill charges, in substance, that complainant was and had been for several years seised in fee of the north-west quarter of the north-east quarter and of the south-east quarter of the north-west quarter of section twenty-seven in township two, south, in range five west, situate in Washington county, which was inclosed and in cultivation. That Rudolph Jasper, the defendant, was then and had been for several years owner in fee of the north-east quarter of the north-east quarter of the same section and in possession of it. That at the time the land was purchased by complainant, and at the time defendant purchased his land, and up to the year 1859, a stream of water run across defendant's land from near the south-east corner of it, across and near to the north-west corner of it in its natural channel, thence out on other land, not touching complainant's land. That, in 1859, the defendant, without permission or leave of complainant or notice to him, plowed and dug a ditch across the south side of his land from east to west, and turned the stream, and caused it to run from east to west across his land, and thence upon and across complainant's land, by which the land was seriously and permanently injured. That he notified the defendant to fill up the ditch and allow the water to run in its natural channel, but that he refused to comply with the notice, and persisted in keeping the ditch open and running the water upon complainant's land. That the ditch so constructed and flowing the water on to complainant's land, is a nuisance to him, and is against equity and justice and has damaged complainant to the amount of two hundred dollars, and so long as it is allowed to exist it will be a continued cause of mischief and of irreparable injury to complainant and to his land.

The prayer is that defendant be decreed to discontinue the ditch and fill it up, and allow the water to pursue its natural channel, and that the defendant be perpetually enjoined, by ditching or otherwise, from turning the water upon complainant's land, and that complainant be allowed his just damages sustained by reason of the ditch and flowing the water upon his land and for general relief.

The answer denies that, at the time complainant purchased his land, there was a stream of water running across the land of defendant, or at any time since, but says there is no such stream of water, nor ever has been since he owned the land. He denies that in 1859, or at any other time, he plowed or dug a ditch across his own land, for the purpose of turning any stream of water from its natural channel, or that, by any plowing or ditching, any water-course or stream of water was changed from its natural channel, and charges the fact to be that, whatever water, at any time during the year 1859, run upon or across complainant's land, now runs upon and across the same land, in the same natural course and channel it did before, and at the time complainant purchased the land; denies that complainant's land has been injured by changing any water-course since complainant became owner, or that any water-course or stream has been, in any way, changed, by ditches or plowing, from the natural channel; denies that any ditching he has made since they respectively purchased their lands, does or will flow the water on the complainant's land, to his injury, and to its impairment in value.

No replication was filed to the answer, but much testimony was taken by depositions, and the cause fully heard on its merits, and a decree entered dismissing the bill.

To reverse that decree the complainant prosecutes this writ of error, assigning, as error, the refusal of the court to have his damages assessed, refusing to grant the relief prayed, and in dismissing the bill.

On this assignment of error the question arises, does the bill present a case demanding the interposition of a court of equity?

The bill claims that the act of the defendant in making the ditch, by which the accustomed flow of the water was changed, and on to his land, works him a permanent and irreparable injury; that it is a nuisance, and its erection and continuance has damaged him to the extent of $200 at the least.

The defendant in error contends that the injury complained of, by cutting the ditch, was committed before complainant was the owner of the land, and while the United States were the owners; and when he purchased it from the United States he purchased with this nuisance, if it be one, upon it. He further insists there is not now, and has never been, at the locality of the alleged offense, any running stream of water, the natural channel and flow of which could be diverted; and he further insists that the ditch he has constructed is of great benefit to complainant's land.

The proofs show that Reuben Lively owned one of the "forties," and, whilst such owner, he permitted the defendant to run furrows on it, the other forty being known as congress land. These are the tracts now owned by complainant, he having, subsequent to the ditching by defendant, become the owner.

There is no conflict in the testimony as to the nature of this water-flow, which is alleged to be diverted. It appears to be a mere wet-weather branch, carrying off the rains as they fall, with scarcely a perceptible depression in the ground over which it passes, though when leveling instruments are applied, there is found to be a trifling depression.

There is some conflict in the testimony on the question of injury to complainant. If digging the ditch by defendant to improve his own land be an injury to the complainant, it is certain from the proof it is not irreparable, and it is evident he can be compensated in damages if he has sustained any, for those witnesses who are of opinion he has sustained damages have no hesitation in estimating them at about two hundred dollars.

On these facts, the question arises, is a case made for the interposition of a court of equity to exercise its powers? There

can be no doubt of the general powers of that court in cases of private nuisance. It can prevent a threatened one or remove an existing one; it may grant remedial as well as preventive relief. *The People* v. *The City of St. Louis et al.*, 5 Gilm. 351. The general ground of its interference is understood to be that kind of material injury to property or health requiring the application to prevent as well as remedy an evil, for which damages, more or less, would be given in an action at law. *Attorney-General* v. *Nichol*, 16 Vesey, 343. Story, in his treatise on equity jurisprudence, says, it is undoubtedly founded on the ground, among others, of restraining irreparable mischief. But he says, it is not every case which will furnish a right of action against a party for a nuisance, which will justify the interposition of that court, to redress the injury, or to remove the annoyance. 2 Eq. Jur. 238, § 925.

There must be such an injury as from its nature is not susceptible of being adequately compensated by damages at law, or such as, from its continuance or permanent mischief, must occasion a constantly recurring grievance which cannot be otherwise prevented but by an injunction. Id.

Therefore, a mere diminution of the value of property by the nuisance, without irreparable mischief, will not furnish any foundation for equitable relief. Id. 239, § 925.

One of the most usual cases for this remedial interposition of a court of equity, is the obstruction of water-courses, and another is the diversion of streams of water from mills. Neither of these is charged by this bill. Taking the charge in the bill in connection with the evidence, the great ground of complaint would seem to be that by leading the surface water by this ditch to the furrows on complainant's land, made when Lively owned it, a gully has been formed through complainant's land where there was already a natural outlet for it, and he would thereby be incommoded by two ditches, greatly retarding his plows, drills and farming operations to be carried on in the fields where such ditches or drains are.

Now, that this additional ditch, so made, by reason of the defendant's ditch, is a grievance to the complainant, there can

be no doubt, and it is constantly recurring, if the land through which it shall pass be arable land, which the proof shows it is; but it is one of a trifling character—one with which a court of equity should not be expected to interfere.  Besides, the damage to the complainant, so far from being irreparable, is adjusted by the witnesses at two hundred or two hundred and fifty dollars at the utmost.  That is the extent of the injury done to the complainant, through all time to come, as we understand the testimony.  This being so, an adequate remedy exists at law to recover in a proper action those damages, or more, if more shall be proved.  Adams' Eq. 210, and notes; 2 Story's Eq. Jur. 244.

The fact that defendant did the act of which complaint is made before complainant became the owner of the land, and with the consent of the then proprietor of one of the tracts, the other tract being "congress land," ought to have its influence in determining this case.

Complainant, when he purchased the land, knew this ditch had been made and the furrows cut on the land he was about to buy—knew their purpose and design, and knew the effect they would and did have, upon his intended purchase.  Acquiring the land with this ditch constructed and furrows made, he took it with all its drawbacks and inconveniences.  The defendant had an unquestionable right to improve his own land by ditching through it, and if, in the operation, water was thrown on to the land of an adjoining proprietor with his consent, or on to congress land, we do not well see on what ground the complainant can complain, or with what propriety a court of equity can interfere to abate the nuisance, if it be one, or award damages, the latter especially, since the proofs show the injury can be repaired by a recovery in an action at law.

There is another objection to this action.  The proofs do not establish to our satisfaction the existence of any natural watercourse, the flow of which the defendant has diverted.  It is a mere wet-weather branch of no value, except as a drain for the adjacent lands, so that the cases cited for diverting a watercourse have no application.

The injury complained of here is of an entirely different character, as we have already stated. The real complaint is, by the proof, that turning the water by this ditch made by the defendant makes an additional gully on complainant's land, and so incommodes him in his farming operations. For such an injury the remedy is complete at law.

We admit a court of chancery will sometimes relieve by ·injunction, though a suit at law may be maintained for the ·injury; but this is not one of those cases. It is a naked case for damages at law, if any action at all can be maintained on 'the facts as proved.

Perceiving no error in the decree, it must be affirmed.

*Decree affirmed.*