C. F. PINKSTAFF

*v.*

RICHARD S. STEFFY *et al.*

*Opinion filed June 23, 1905—Rehearing denied October 12, 1905.*

1. DRAINAGE—*owner of the dominant estate has a natural easement of drainage over servient estate.* The owner of the dominant estate has a natural easement over the land of the servient estate for the flow of both the surface waters and water-courses, and the owner of the servient estate cannot interfere with or divert the flow of water-courses.

2. SAME—*what does not defeat the right of dominant owner to drainage in case of floods.* The fact that, after the owner of the servient estate has constructed a levee, the owner of the dominant estate is able, by constructing ditches, to carry the waters contrary to their natural course so that his land is ordinarily drained, does not defeat his right to the benefit of the natural drainage over the servient estate in times of flood.

3. SAME—*water overflowing bank of a small stream is surface water.* Water overflowing the banks of a small stream in times of flood, because of the insufficiency of the natural channel to carry it off, is surface water, within the meaning of the law relating to natural drainage.

4. SAME—*what does not justify construction of levee by servient owner.* The interest of good husbandry does not justify the construction of a levee by the owner of the servient estate along the bank of a creek to protect his land from overflow in times of flood, where the effect thereof is to interfere with the natural flow of the water to the injury of the owner of the dominant estate.

5. ARBITRATION—*scope of arbitration and award cannot be enlarged by parol.* The scope and effect of an arbitration must be determined from the language of the submission and award, and cannot be enlarged by parol.

6. SAME—*when award is a mere license.* An award entered on a written submission to arbitration, not a statutory one, wherein the owner of the servient estate is given the right to build a levee on a certain line without specifying the character or size of the levee, is a mere license, which is good only so long as the levee built thereunder remains intact, but does not carry the right to re-build the levee after its destruction.

7. APPEALS AND ERRORS—*when admission of incompetent evidence will not reverse.* Admission of incompetent evidence in a chancery case will not work reversal of the decree if there is sufficient competent evidence to sustain it, since the chancellor is presumed to have considered only the competent evidence.

WRIT OF ERROR to the Circuit Court of Lawrence county; the Hon. E. E. NEWLIN, Judge, presiding.

Defendants in error exhibited their bill in chancery to the October term, 1904, of the circuit court of Lawrence county, praying for an injunction restraining plaintiff in error from repairing or re-building any line of levee or embankment on the north and east sides of plaintiff in error's land. Defendant in error Richard Steffy owns the south-west quarter of the south-west quarter of section 33, in town 5, range 11, defendant in error Malinda A. Steffy owns the south half of the north-east quarter of the south-east quarter of section 32, and plaintiff in error owns the south half of the south-east quarter of said section 32, all in the same town and range, so that the land of Richard Steffy lies directly east of that of Pinkstaff and the land of Malinda Steffy lies directly north of the east half of the Pinkstaff land. Along and near the north line of Richard Steffy's land and across on the south side or end of the land of Malinda Steffy, and extending on east and along and near to the north line of the land of Pinkstaff, is Glady Fork creek. The bill alleges that the land of the defendants in error is higher in elevation than the land

of the plaintiff in error, and that the land of said defendants in error is the dominant heritage and the land of the plaintiff in error is the servient heritage; that the surface water falling and accumulating upon the land of the defendants in error in a state of nature flowed off over the land of the plaintiff in error through a natural water-course or depression leading from the land of the defendants in error; that in 1897 the plaintiff in error constructed a levee or embankment along both the north and east lines of his land and thereby dammed the natural water-course, forcing the water back upon the land of the defendants in error, diverting the course of the water; that in 1904 the said levees of the plaintiff in error were broken by the flow of the water, and that plaintiff in error is about to repair and re-build the same and make said levees both higher and wider than they formerly were, and intends to maintain the same, to the irreparable injury to the land of the defendants in error.

Plaintiff in error answered the bill, denying that his land was the servient heritage and that the same was the natural outlet for all the surface water falling and accumulating on the land of defendants in error; admits that he repaired the levees mentioned in the bill in 1897 to protect his land from overflow from Glady Fork creek; denies that the levee was constructed to obstruct the natural flow of the surface water or that he changed the natural drainage of the lands; avers that the levees were constructed in 1876, before the defendants in error owned their land and before the plaintiff in error purchased his land, and that he has since that time maintained the same; avers that in May, 1897, the defendant in error Richard Steffy and the plaintiff in error submitted, in writing, to arbitration the question of the right of the plaintiff in error to construct and maintain a levee along the east line of his land, and that arbitrators were selected and acted, and returned a written award confirming the right of the plaintiff in error to construct and maintain said line of levee along the east end of his land.

Replication was filed to the answer, and the cause was heard by the chancellor in open court upon the oral testimony of the witnesses and documentary evidence, and a decree was entered finding the allegations of the bill of complaint sustained as to the east levee. It found the issues against the defendants in error as to the north line of the levee, and perpetually enjoined plaintiff in error from maintaining his levee along said east line. From the decree so entered the plaintiff in error prosecutes this writ, and complains that the court erred in admitting certain evidence offered on the part of the defendants in error and in not holding that the evidence was insufficient; that the action was barred by the Statute of Limitations and by said arbitration.

W. F. FOSTER, S. B. ROWLAND, and C. J. BORDEN, for plaintiff in error.

GEE & BARNES, and J. E. McGAUGHEY, for defendants in error.

Mr. JUSTICE RICKS delivered the opinion of the court:

As this cause was heard by the chancellor in open court we will not feel authorized to disturb the findings and decree unless from a review of the evidence we are satisfied that the decree is so manifestly against and contrary to the weight of the evidence that it ought not to be allowed to stand.

We have read the evidence as abstracted and considered it with care, and concur in the view of the court that the lands of the defendants in error are the dominant heritage, and that according to their natural contour and the lay of their surface the drainage of surface waters from the portion of Malinda Steffy's land lying south of the creek, and substantially the whole of the land of Richard Steffy, is through the land of plaintiff in error. The creek in question is described as being about thirty-five feet wide with banks of about five feet, and having its main course toward the

west. The natural fall of the bed of the creek and lands on both sides, and particularly on the south side, reasonably and substantially conform to each other. East of the land of Richard Steffy are small hills and broken country sloping toward the west and having their drainage over his land. The elevation at his east line ranges from six to ten feet higher than the west line of the Pinkstaff land and from three to five feet higher than the east line of the Pinkstaff land, and there is a swale or natural depression leading from the Steffy land on and through the land of Pinkstaff, which the overflow water usually followed. The evidence shows that at times of freshet the channel of the creek is not of sufficient dimensions to retain the waters flowing into the same, and that in the vicinity of the lands of these parties said creek frequently overflows; that in 1904, when it did overflow, it crossed the land of Richard Steffy with such force and in such quantities that when the east levee between the Steffy and Pinkstaff land was reached the water to a considerable extent destroyed the levee and swept on through the land of Pinkstaff and drained and freed the land of Richard Steffy from the accumulated water. There can be no question that when overflows occur the effect of the levees in question, which are so near to the stream, is to narrow what was originally the natural bottom and might be said to be a natural channel at flood time, and to thereby raise the body of water and to more extensively and deeply submerge land adjoining the Pinkstaff land.

The evidence discloses that after the levee was constructed Richard Steffy made certain tile drains and ditches on his land, by which he was enabled to carry the waters, contrary to the course of natural drainage, back in a northerly direction to the creek, and that these ditches reasonably protected his land, except at such times as there were freshets or overflows; and it also appears that in the western portion of his land there is a pond which in a state of nature contains from one to three acres, and in which water stood the

greater part of the year, until it was drained out by the ditches above mentioned. Plaintiff in error seems to be of the opinion that because of the existence of this pond, which even in a state of nature would not drain out or entirely empty over his land, and because of the ditches above mentioned, Richard Steffy is not entitled to the relief claimed. His theory seems to be that if Richard Steffy could carry the water by any means of drainage off of his land that naturally falls there, he is not entitled to the benefit of the natural drainage in cases of floods. The view seems to be, that unless, by the course of natural drainage, the ordinary surface waters of the Steffy land must seek their outlet over the land of Pinkstaff, the latter may, by levee or embankment, obstruct the flow of any waters, and especially is it contended that plaintiff in error is entitled to levee against the overflow water that may come upon the Steffy land, as it is contended that in the consideration of the rules of natural drainage, overflow water has not been taken into account.

In support of his contention plaintiff in error cites *Groff v. Ankenbrandt*, 124 Ill. 51. That case, when properly considered, does not support the contention. The opinion there was upon the pleadings, and the declaration charged that the levee or embankment wrongfully and unlawfully obstructed the flow of large quantities of water flowing to and against the said levee or embankment on the east side thereof. It was held insufficient because it did not allege or aver that the flow was a natural flow of water, and it is there pointed out sufficiently for the purposes of that case what constitutes surface water, and as the case did not require it, it was not said whether water overflowing from the creek on to the land of the adjacent owner would be regarded as surface water or not. So far as the question here involved is concerned, the distinction between surface water and a watercourse is not important. In this State the rule of the civil law has been adopted. By it the owner of the dominant heritage has a natural easement over the land of the servient

heritage for the flow of the surface waters. By it, also, the owner of the servient heritage cannot interfere with or divert the flow of the water-courses. *Gillham* v. *Madison County Railroad Co.* 49 Ill. 484; *Gormley* v. *Sanford,* 52 id. 158; *Peck* v. *Herrington,* 109 id. 611; *Lambert* v. *Alcorn,* 144 id. 313.

In *Gormley* v. *Sanford, supra,* after announcing the adoption of the rule according to the civil law and reviewing the *Gillham case, supra,* it is said (p. 161) : "Although there was a conflict of authorities among the courts of this country, yet the rule forbidding the owner of the servient heritage to obstruct the natural flow of surface waters was not only the clear and well settled rule of the civil law, but had been generally adopted in the common law courts both of this country and of England. * * * In our judgment the reasoning which leads to the rule forbidding the owner of a field to overflow an adjoining field by obstructing a natural water-course fed by remote springs, applies with equal force to the obstruction of a natural channel through which the surface waters, derived from the rain or snow falling on such field, are wont to flow. What difference does it make, in principle, whether the water comes directly upon the field from the clouds above or has fallen upon remote hills and comes thence in a running stream upon the surface, or rises in a spring upon the upper field and flows upon the lower? The cases asserting a different rule for surface waters and running streams furnish no satisfactory reason for the distinction."

It might with equal force be inquired here what difference it can make, in principle, whether the water that submerges the land of Steffy comes from the hills above the land or comes from the overflow of a stream along the same. We are unable to see either the distinction or the ground for one. Both are natural consequences. Both are burdens cast upon the adjacent lands by the laws of nature, and as applied to such creeks and streams as the one in question we have

no doubt that the correct rule is "that waters which have overflowed the banks of a stream in times of freshet, in consequence of the insufficiency of the natural channel to hold them and carry them off, are surface waters, within the meaning of the rules of law relative to such waters." (24 Am. & Eng. Ency. of Law,—1st ed.—903.) Whether this law would obtain when applied to large rivers is not before us and we do not decide.

Accepting the law as above stated, the waters in question are surface waters, and the evidence clearly shows that when the stream overflows, the waters from the land of Steffy have their natural outlet over the land of Pinkstaff. It also shows that so long as the levee was able to withstand the pressure of the water the land of Steffy remained submerged, while the land of Pinkstaff would be quickly freed from water and his crops not interfered with, and that when the levee was broken down by the pressure of the water the land of Steffy, except as to the pond in question, was relieved from the water as quickly as that of Pinkstaff.

It is urged by the plaintiff in error that in the interest of good husbandry he is entitled to maintain the levee to protect his crops from inundation by overflow from the water-course in question; and if he could so protect his crops and lands without injuring others the rule invoked would readily be admitted, but the civil law rule of drainage being founded upon natural right, carries with it also the rule that one must so use his own as not to injure another or to deprive another of that right of natural drainage which the law guarantees to him, and if by the construction of the levee in question, although good husbandry may, on the part of Pinkstaff, dictate and justify the same, yet if by so using his land he injures Steffy by depriving him of the enjoyment of the right of natural drainage, then Pinkstaff cannot avail himself of the plea of good husbandry that benefits himself alone and to the injury of his neighbor.

The plea of the Statute of Limitations was not sustained by the evidence. While there was evidence tending to show some kind of levee had been, at least part of the way, along the east line of the Pinkstaff land as early as 1876, there was evidence showing that it had only existed about seventeen years, and still other evidence showing that the only levee prior to 1895 was a small levee about one foot high part of the way, very narrow, and made for the purpose of a line upon which to construct a fence. In addition to this, plaintiff in error submitted his right to have a levee there to arbitration in 1897, which it is not reasonable to suppose he would have done had the right ripened under the statute then, as is now contended. The evidence also shows that the levee built after the arbitration of 1897 was entirely different from what had at any time previously existed. The levee that washed out in 1904 was two and one-half feet high and ten feet wide, and the plaintiff in error was about to repair the breaks and raise the levee to an average of about three feet high and ten to twelve feet wide when the present writ of injunction was prayed.

Nor do we think the arbitration was a bar to the action of the defendant in error Richard Steffy. It was not a statutory arbitration or submission. It was in writing, and each agreed to be bound by it. The article of submission was to submit the dispute "concerning the right of C. F. Pinkstaff to make and construct a levee on a line where he had formerly built a levee, to run north from Waters' school house to Glady Fork creek." The object, character, height or width of the levee was not specified or the length of time it should be maintained, or whether it could be re-built if destroyed. The award was in the same restricted language of the submission. Mrs. Malinda Steffy was not a party to it and could not be affected by it, however formal it might have been. Plaintiff in error testified that the submission and award were to determine his "right to maintain" the levee; but in this he is contradicted by the written sub-

mission and award, which could not be enlarged by parol. (*Schmidt* v. *Glade,* 126 Ill. 485.) The scope and effect of the arbitration must be determined from the language and provisions thereof. There are no latent defects calling for or justifying oral explanation. In the absence of any provisions, conditions or agreement for maintaining, repairing or re-building the levee when built or constructed according to the terms of the arbitration, we are disposed to the view that the authority was no more than a license to build a levee. While the levee so built remained intact the arbitration would be a complete defense to its existence, whatever its effect upon Richard Steffy's land, but when the levee was destroyed the extent of the license had been enjoyed by Pinkstaff, and if he desired to build another levee, though along the same line, he must do so subject to the rights of Steffy.

'Cases involving the question and relating to a levee have not been called to our attention nor have we found such, but cases involving the erection of dams on the servient heritage, by which the land of the superior or dominant heritage is overflowed by backwater in times of flood or freshets, are numerous and would seem to involve the same principle, and the holding seems to be uniform that a license to build such a dam does not carry with it the right to re-build if the dam be destroyed. *Wingard* v. *Tift,* 24 Ga. 179; *Hall* v. *Boyd,* 14 id. 1; *Cowles* v. *Kidder,* 24 N. H. (4 Foster,) 364; *Cook* v. *Stearns,* 11 Mass. 399.

The assessment roll was admitted in evidence to show that the land of Richard Steffy, though higher than the land of Pinkstaff, was, because of want of outlet for drainage, assessed lower and of less value than the Pinkstaff land. Assuming that this evidence was incompetent the decree should not be reversed, because there is other competent evidence covering the same point, and the chancellor is presumed to have disregarded the incompetent evidence.

The decree of the circuit court is affirmed.

*Decree affirmed.*