ARMIN BOSSLER *et al.*, Plaintiffs-Appellants, *v.* COUNTRYSIDE GARDENS, INC., Defendant-Appellee.

Fifth District   No. 75-364

Opinion filed December 10, 1976.

Thomas Benedick, of O'Fallon, for appellants.

Thomas M. Welch, of Welch, Welch and Welch, of Collinsville, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

Plaintiffs Armin and Henrietta E. Bossler appeal seeking to reverse a trial court judgment upholding the right of defendant Countryside Gardens, Inc., a corporation, to maintain a dam on its property.

The sole issue presented for our consideration on this appeal, is whether the dam constructed by the defendant-appellee interfered with the natural surface water drainage of the plaintiffs-appellants' land, to its damage.

The facts which gave rise to the instant litigation are as follows. Plaintiffs and defendant are owners of adjoining property. The plaintiffs' land is of a higher elevation than that owned by the defendant; theirs is the dominant estate. There is a natural drainage depression which runs from the plaintiffs' property onto the defendant's land. This depression

drains 22.14 acres of the plaintiffs' land. In 1970 the defendant constructed a dam in the depression which created a lake. At one time the waters of the lake covered some of the plaintiffs' land, but this condition was corrected by the defendant through the use of a 24-inch corrugated pipe outlet which effectively controls the level of the lake. All of the plaintiffs' land is higher than the level of the lake and the water in the lake does not extend onto the plaintiffs' property.

After the construction of the dam in 1970, the plaintiffs began to experience drainage problems. The plaintiffs contend that the construction of the defendant's dam altered the natural surface water drainage from its land, causing approximately three acres to become unarable. Specifically, plaintiffs argue that the obstruction created by the dam on the defendant's property resulted in the improper drainage of their lands, and in the passing back of water onto plaintiffs' dominant estate.

■■ There is no dispute as to the law controlling this case. Our courts have long followed the civil law rule when faced with the question of damage resulting from interference with surface water drainage. Under the civil law rule, which had its origin in the Roman Law and the Code Napoleon, a servitude of natural drainage is recognized between adjoining lands. See Annot., 59 A.L.R.2d 421, 429 (1958).

■■ That rule requires an owner of a servient estate to accept surface water which naturally drains onto his land from a dominant estate, and further requires the owner of the dominant estate to do nothing to change the system of drainage so as to increase the burden of surface water drainage upon the owner of the servient estate. (*Turley v. Arnold*, 384 Ill. 158, 51 N.E.2d 176; *Geis v. Rohrer*, 12 Ill. 2d 133, 145 N.E.2d 596.) This latter portion of the rule is, however, subject to the "good husbandry" exception which permits interference by the dominant estate owner when incidental to the reasonable development of the dominant estate for agricultural purposes. See *Templeton v. Huss*, 57 Ill. 2d 134, 311 N.E.2d 141.

A leading Illinois case on the subject of surface water drainage is *Gough v. Goble*, 2 Ill. 2d 577, 119 N.E.2d 252. There our Supreme Court followed the law of surface water drainage which they found to have been established in *Town of Nameoki v. Buenger*, 275 Ill. 423, 114 N.E. 129. Iterating the civil law rule of natural surface water drainage the *Gough* court stated:

> "Where water from one tract of land falls naturally upon the land of another, the owner of the lower land must suffer the water to be discharged upon his land and has no right to stop or impede the natural flow of the surface water." (2 Ill. 2d 577, 580, 119 N.E.2d 252, 254.)

The rule of *Gough v. Goble* has been followed in our courts without exception. (See *e.g., Eberle v. Greene*, 18 Ill. 2d 322, 163 N.E.2d 822, and *Geis v. Rohrer.*) Plaintiffs cite in their brief several cases which restate the civil law rule of natural surface water drainage and are compatible with *Gough, e.g., Minnie Creek Drainage District v. Streeter*, 327 Ill. 236, 158 N.E. 383; *Pinkstaff v. Steffy*, 216 Ill. 406, 75 N.E. 163.

Plaintiffs seek to analogize the facts in the instant case to those before the court in *Gough* arguing that the servient landowner (defendant) has violated its natural servitude by constructing a dam and thereby obstructing the natural drainage flow from the plaintiffs' property. This obstruction of the natural drainage flow, plaintiffs contend, has resulted in improper drainage of its lands, and in water being passed back onto its dominant estate.

In *Gough*, the defendant, a lower landowner, constructed a dam at the mouth of a culvert which drained water from the plaintiff's land and discharged onto defendant's land. For 40 years prior to the construction of the dam, surface waters from the plaintiff's land passed through the culvert and emerged at a point upon defendant's land which, due to the action of the water from the culvert, was two feet lower than the general level of defendant's land. The top of the defendant's dam was no higher than the general level of defendant's lower land, and defendant contended that all the dam did was restore the land to its natural level.

In ordering the dam removed, the *Gough* court held that since the level of the land at the point where the plaintiff's water drained onto it had been lowered by the natural process of erosion, that by restoring the land to its "natural" level by construction of the dam, the defendant had in effect placed an obstruction in front of the culvert. By thus obstructing the culvert, the court reasoned, the defendant had impeded the natural flow of surface waters from the plaintiff's land.

Plaintiffs argue that the facts in the instant case bring it within the rule of natural surface water drainage stated in *Gough*. We disagree. In the trial court the evidence indicated that plaintiffs' and defendant's land adjoin and that the plaintiffs' land is of a higher elevation than the defendant's. Surface waters draining from the plaintiffs' land normally passed through a natural drainage ditch onto defendant's land. After defendant built a dam across the drainage ditch plaintiffs complained that the natural drainage flow from his land had been obstructed and that water which would normally drain upon defendant's land was passed back upon the dominant estate of the plaintiff. Unlike *Gough*, there is no indication that the defendant here constructed his dam for the purpose of preventing waters draining from the plaintiffs' land from draining across his property. Quite to the contrary, the record reveals that the defendant's purpose in constructing the dam was not concerned with drainage, but

rather with developing an attractive building site. In *Gough* there was conclusive evidence that the drainage problems experienced by the dominant estate were the exclusive result of the obstruction of the natural drainage created by the construction of a dam on the servient estate. The plaintiff in *Gough* was able to show that the obstruction created by the defendant's dam impeded the flow of surface waters draining from its land causing waters to back up upon its dominant estate.

Here, however, the record reflects uncertainty as to the cause of the plaintiffs' drainage problems. Plainly there was no "passing back" of water onto the dominant estate as a result of the defendant's dam, since the level of the lake formed by the dam rested entirely below the lowest point of the plaintiffs' land. In addition there was evidence which suggested that the wetness experienced by the plaintiffs had been an area problem over the past few years, and that a rising water table had naturally slowed the water draining from plaintiffs' and other properties in the area. There was also evidence that actions by the plaintiffs such as plowing perpendicular to the water flow in the drainage depression had contributed to the drainage problem. In *Gough* the court relied heavily upon the fact that the defendant in constructing its dam raised the level of its land two feet which resulted in the obstruction of a natural pattern of drainage from the plaintiff's property which had developed over the preceding 40 years. No similar obstruction was created by the defendant in this case.

As noted in the trial court the level of the water in the lake created by defendant's dam was lower than the lowest point of the plaintiffs' land. All of the water in the lake rested upon the defendant's property. It would be impossible for lake waters resting entirely below the level of the plaintiffs' adjoining higher grounds to pass back upon the plaintiffs' lands without raising the level of the lake. The trial court properly took judicial notice of the law of gravity and the fact that water will not run uphill. (See 1 Jones on Evidence §143 (5th ed. 1958).)

■■ Although the record indicates that plaintiffs began to experience drainage problems after the construction of the defendant's dam, there is no indication that the lake, the water level of which was below the lowest point of the plaintiffs' land, formed any obstruction to the natural drainage therefrom. Additionally, the record contained evidence that area difficulties such as heavy rainfall and a rising water table combined with plaintiffs' farming methods and contributed to his drainage problems.

Finding no error in the judgment rendered by the trial court, we affirm.

Affirmed.

CARTER, P. J., and G. J. MORAN, J., concur.