GREG MILEUR, *et al.*, Plaintiffs-Appellants v. THOMAS McBRIDE, *et al.*, Defendants-Appellees.

Fifth District   No. 5—85—0742

Opinion filed September 16, 1986.

Gerald S. Reed, of Murphysboro, for appellants.

Michael F. Dahlen and Richard A. Green, both of Feirich, Schoen, Mager, Green & Associates, of Carbondale, for appellees.

JUSTICE HARRISON delivered the opinion of the court:

Plaintiffs, Greg and Debbie Mileur, appeal from an order of the circuit court of Jackson County dismissing their complaint with prejudice for failure to state a cause of action. For the reasons which follow, we reverse and remand.

■ In determining the sufficiency of a complaint on a motion to dismiss, a court must take as true all facts properly pleaded. (*Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, 505, 485 N.E.2d

372, 374 *cert. denied* (1986), 475 U.S. 1122, 90 L. Ed. 2d 187, 106 S. Ct. 1641.) Plaintiffs' complaint here is in two counts. Count I alleges that plaintiffs own a parcel of land located at 2031 Herbert Street, Murphysboro, which they purchased on September 1, 1983. Immediately west of and adjacent to plaintiffs' land is property owned by defendants, Thomas McBride and Harlin Barnett. Defendants bought that property on December 3, 1982.

Plaintiffs allege that prior to December 3, 1982, the elevation of defendants' property was lower than that of their land. Surface waters which came or fell upon plaintiffs' land would flow through a natural watercourse which ran westerly across plaintiffs' land down to a drainage ditch situated on defendants' property. Upon reaching the ditch, the surface waters would drain northward through the ditch to the south side of Herbert Street, where they would empty onto the street. After defendants purchased their land, however, they allegedly improved it by: (1) laying fill dirt which raised its grade to a level higher than that of plaintiffs' land, completely eliminating the drainage ditch, and (2) constructing a duplex housing unit with gutters which defendants caused to drain directly onto plaintiffs' land.

According to count I of plaintiffs' complaint, these improvements to defendants' property:

"caused surface waters to be diverted from their natural course such that said water does not drain off Plaintiffs' property, but rather, floods Plaintiffs' property in times of heavy rainfall and stands thereon for long periods of time, causing severe damage and loss to Plaintiffs."

Plaintiffs allege that in causing this diversion of surface water through the specified improvements, defendants acted unreasonably and in violation of their duty to use their land so as not to injure their neighbors' property. As a consequence, they claim to have sustained $2,000 in damage to their home, garage and personal property and allege that they are now forced to install sewer lines and inlets at an estimated cost of $1,925. Plaintiffs further claim that defendants' actions were done maliciously and with wanton disregard of plaintiffs' rights, for which they request the additional sum of $8,000 as punitive damages.

Count II of plaintiffs' complaint incorporates by reference the factual allegations of count I, with the exception of those pertinent to their claim for punitive damages, but avers that defendants were negligent. Defendants' negligence is alleged to consist of:

"a. Failing to provide for the proper drainage of surface water from Defendants' property without interfering with Plain-

tiffs' use of his property.

b. Failing to provide for the drainage of surface water from Defendants' property away from Plaintiffs' property.

c. Raising the grade of Defendants' property excessively in relation to Plaintiffs' property thereby causing an excessive flooding of Plaintiffs' property.

d. Failing to construct a barricade; retaining wall, or other structure to prevent surface water from flooding Plaintiffs' property."

On defendants' motion, the circuit court dismissed both counts of plaintiffs' complaint for failure to state a cause of action. Plaintiffs' motion to reconsider was denied. The only specific finding made by the court in support of its decision related to count II, with respect to which the court held simply that no duty was owed by defendants to plaintiffs. Plaintiffs now appeal.

No cause of action should be dismissed on the pleadings "unless it clearly appears that no set of facts can be proved which will entitle Plaintiff to recover." (*Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, 506, 485 N.E.2d 372, 374, *cert. denied* (1986), 475 U.S. 1122, 90 L. Ed. 2d 187, 106 S. Ct. 1641.) Plaintiffs in this case argue that the allegations in their complaint properly state a cause of action for obstruction of an easement they have over defendants' property for the flow of surface water which drains naturally from their land. We agree.

Where, as alleged here, two adjoining parcels of land are situated such that surface water falling or coming onto one naturally descends upon the other, the owner of the higher (dominant) land has a natural easement in the lower (servient) tract to allow the surface water to flow naturally off the dominant land upon or over the servient land. (*Pinkstaff v. Steffy* (1905), 216 Ill. 406, 411-12, 75 N.E. 163; *Peck v. Herrington* (1884), 109 Ill. 611, 619; *Coomer v. Chicago & North Western Transportation Co.* (1980), 91 Ill. App. 3d 17, 22, 414 N.E.2d 865, 869.) Correspondingly, the owner of the servient land " 'must suffer the water to be discharged upon his land and has no right to stop or impede the natural flow of the surface water.' " (*Geis v. Rohrer* (1957), 12 Ill. 2d 133, 136, 145 N.E.2d 596 quoting *Gough v. Goble* (1954), 2 Ill. 2d 577, 580, 119 N.E.2d 252.) The servient owner "cannot, by an embankment or other artificial means, obstruct the water in its natural flow, and thus throw it back upon the upper proprietor." *Gillham v. Madison County R.R. Co.* (1869), 49 Ill. 484, 487.

This theory of surface-water drainage is the so-called "civil law rule." Its origins can be traced back to Roman law and the Code of

Napoleon, and it has been consistently followed by the courts of Illinois for more than 100 years. (*Bossler v. Countryside Gardens, Inc.* (1976), 44 Ill. App. 3d 423, 424-25, 358 N.E.2d 352, 355-56; see *Gillham v. Madison County R.R. Co.* (1869), 49 Ill. 484, 486-87.) The justification for the rule has been explained as follows:

> "The right of the owner of the superior heritage to drainage is based simply on the principle that nature has ordained such drainage, and it is but plain and natural justice that the individual ownership arising from social laws should be held in accordance with pre-existing laws and arrangements of nature. As water must flow, and some rule in regard to it must be established where land is held under the artificial titles created by human law, there can clearly be no other rule at once so equitable and so easy of application as that which enforces natural laws. There is no surprise or hardship in this, for each successive owner takes with whatever advantages or inconveniences nature has stamped upon his land." *Gormley v. Sanford* (1869), 52 Ill. 158, 162.

An exception to the civil law rule has been recognized which allows a railroad company in improving its right-of-way to make reasonable alterations to the natural flow of surface water, provided that adjacent dominant tracts are not damaged thereby. (*Coomer v. Chicago & North Western Transportation Co.* (1980), 91 Ill. App. 3d 17, 22, 414 N.E.2d 865, 869.) Moreover, the courts of this State have held that owners of the dominant estate may interfere with the natural drainage of surface water, provided that such interference is limited to that which is incidental to the reasonable development of the dominant estate. (See *Templeton v. Huss* (1974), 57 Ill. 2d 134, 141, 311 N.E.2d 141, 145-46.) This principle originated in an agricultural context with the "good husbandry rule," which provides:

> "[T]he owner of the upper field can not construct drains or ditches so as to create new channels for water in the lower field, but he may make such drains, for agricultural purposes on his own land, as may be required by good husbandry, although by so doing the flow of water may be increased in a regular, well-defined channel, which carries the water from the upper to the lower field." *Peck v. Herrington* (1884), 109 Ill. 611, 619.

In this case, defendants do not operate a railroad company, they do not own the dominant estate, and agricultural land is not involved. They nevertheless assert that the policy of reasonable use underlying the aforementioned doctrines should be extended to create an addi-

tional exception to the civil law rule which would permit owners of servient land located in urban settings to interfere with the natural flow of surface water where such interference is necessary to enable the servient owner to make reasonable use of his property. Such an exception, they reason, would justify the obstruction to the natural flow of surface water caused by the improvements at issue herein, barring any recovery by plaintiffs.

*Dictum* in *Gormley v. Sanford* (1869), 52 Ill. 158, 162-63, does suggest that the civil law rule may not be appropriate in the case of urban lots, where a city "has established an artificial grade, and provided an artificial sewerage, of which property owners can reasonably avail themselves." Nevertheless, despite the passage of more than a century since that decision, no reported Illinois case of which we are aware has followed its suggestion and adopted a "reasonable use" exception. The explanation does not lie in the novelty of the proposition. This is not a matter of first impression. In *Mello v. Lepisto* (1966), 77 Ill. App. 2d 399, 222 N.E.2d 543, the court considered and rejected defendants' assertion "that Illinois has modified the civil law rule in the case of urban lands and in that instance applies the so-called 'reasonable use' rule." (77 Ill. App. 2d 399, 402, 222 N.E.2d 543, 545.) After reviewing the pertinent authorities, it stated unequivocally:

> "We conclude that the civil law rule is the law in Illinois and that it applies to all lands without regard to their degree of development. There is no 'reasonable use' exception under Illinois law." (77 Ill. App. 2d 399, 402, 222 N.E.2d 543, 545.)

(See also *Elliott v. Nordlof* (1967), 83 Ill. App. 2d 279, 283, 227 N.E.2d 547, 549 (citing *Mello* to apply civil law rule to drainage of surface waters over lots located in subdivision in city of Rockford).) We concur in this conclusion.

■ There can be no serious dispute that plaintiffs' complaint sufficiently alleges the existence of a natural easement for drainage of surface waters from their land under the civil law rule, which easement defendants have obstructed. Nor can it be doubted that defendants can be held liable for either an intentional or, as alleged in count II, a negligent obstruction of that easement where, as claimed here, the obstruction has prevented the natural drainage of surface waters, causing those waters to back up upon and flood plaintiffs' land and thereby damage their property. (See *Nelson v. Gundlock* (1983), 120 Ill. App. 3d 117, 121, 457 N.E.2d 1052, 1054; 36 Ill. L. & Prac. *Waters* sec. 64, at 97 (1958); *cf. Bossler v. Countryside Gardens, Inc.* (1976), 44 Ill. App. 3d 423, 425-26, 358 N.E.2d 352, 354-55.) Defendants argue, however, that plaintiffs should be precluded from bringing

a damage action on the facts of this case because they did not purchase the dominant estate, in whose favor the easement runs, until after the improvements which obstructed the easement had been completed. This argument has no merit.

■■ A natural easement for the drainage of surface waters from a dominant estate, as alleged here, is an easement appurtenant. (*Larson v. Village of Capron* (1972), 3 Ill. App. 3d 764, 766, 278 N.E.2d 830, 831.) As such, it runs with the land. (*Traylor v. Parkinson* (1934), 355 Ill. 476, 479, 189 N.E. 307.) Its ownership passes with the conveyance of the land to which it is annexed, even without being expressly mentioned, and the servient estate continues to be subject to it until the easement rights are terminated or abandoned. (*Beloit Foundry Co. v. Ryan* (1963), 28 Ill. 2d 379, 388, 192 N.E.2d 384.) There being nothing in the record at this point to indicate otherwise, we therefore assume that ownership of the easement in question here was vested in plaintiffs when they bought their land in September of 1983. Defendants do not contend that plaintiffs' ownership rights were subsequently lost or relinquished. Having thus become owners of the easement, plaintiffs had a legally cognizable interest in seeking redress for its obstruction. Defendants cite no authority to the contrary.

In *Laney v. Jasper* (1865), 39 Ill. 46, our supreme court indicated that where a plaintiff purchases land with knowledge of preexisting improvements by an adjacent landowner which have diverted the natural water course, a court of equity will not intervene to abate the resulting injury to the plaintiff's property through issuance of an injunction. This decision was not, however, based upon any notion that plaintiff had no enforceable legal right to complain of the injury caused by defendants' improvements. Rather, equitable relief was denied on the theory that plaintiff's injury could be adequately repaired through an action at law for damages. (See 39 Ill. 46, 53.) Because an award of damages is the sole relief requested here, we interpret *Laney* to support plaintiffs' right to recovery. See also *Ohio & Mississippi Ry. Co. v. Wachter* (1887), 23 Ill. App. 415, 419, *aff'd* (1888), 123 Ill. 440, 15 N.E. 279.

■ Defendants contend that permitting plaintiffs' cause of action to stand would work an unjust result because it would open the door for future damage actions against them by each successive purchaser of plaintiffs' property *ad infinitum* whenever the property changed hands. This misconstrues the nature of plaintiffs' cause of action and is incorrect. Plaintiffs are not suing for permanent injury to their right in the easement, nor is there any suggestion that such a suit has ever been brought by any of plaintiffs' predecessors in title. Had such

a claim for permanent injury to the real estate been made, it would have precluded any further recovery for any damages caused by defendants' obstruction of the easement. Permanent injury can be compensated only once. See *Strange v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* (1910), 245 Ill. 246, 251-52, 91 N.E. 1036; 36 Ill. L. & Prac. *Waters* sec. 64, at 97 (1958).

From the face of the complaint, we understand plaintiffs' claim to be limited to the particular damage to their buildings, property and possessions suffered since they purchased their land. Recovery for prospective damages is apparently not sought. Plaintiffs had the option of proceeding in this manner. (*Strange v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* (1910), 245 Ill. 246, 262, 91 N.E. 1036.) Neither plaintiffs nor their successors in interest will, of course, be able to recover a second time for these particular injuries. On the other hand, plaintiffs and their successors may seek further recovery for any further injuries caused by defendants' continued obstruction of the easement. (See *Illinois Central R.R. Co. v. Heisner* (1901), 93 Ill. App. 469, 471, *aff'd* (1901), 192 Ill. 571, 61 N.E. 656; 36 Ill. L. & Prac. *Waters* sec. 64, at 97 (1958).) Such a result is necessary to protect the legitimate property rights of plaintiffs and plaintiffs' successors. To prevent any additional liability, defendants need do no more than abate their obstruction of the easement or acquire the easement rights for themselves. We can see no injustice in this.

For the foregoing reasons, the judgment of the circuit court of Jackson County dismissing counts I and II of plaintiffs' complaint is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

KASSERMAN, P.J., and JONES, J., concur.