GEORGE BODENSCHATZ *et al.*, Plaintiffs-Appellants, v. JANE MIESNER PARROTT *et al.*, Defendants-Appellees.

Fifth District   No. 5—86—0075

Opinion filed March 17, 1987.

James A. Lawder, Jr., of Wolff & Jones, of Murphysboro, for appellants.

Edward J. Heller, of Reed, Heller & Mansfield, of Murphysboro, for appellees.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

Plaintiffs filed a complaint in the circuit court of Jackson County seeking an injunction prohibiting certain farming practices pursued by defendants and mandating removal of all obstructions to the natural flow of surface water from plaintiffs' land across those of defendants. In the alternative, plaintiffs sought authority to go upon defendants' lands to remove the alleged obstructions. The trial court found plaintiffs failed to sustain their burden of proof and entered judgment for defendants. Plaintiffs appeal from this judgment.

Plaintiffs and defendants all own or work land along a natural drain called Cottonwood Slough in the Mississippi Bottoms area in Jackson County, just west of Jacob and Neunert. Starting with the Bodenschatzes' property, water flows from the west toward the east and south, joining with other surface water from the land of each successive plaintiff until it ultimately reaches the defendants' properties and continues on to the Mississippi River. The Cottonwood Slough, as it proceeds across the parties' lands, consists of a long and gradual slope from west to east.

Plaintiffs complain that beginning about 7 to 10 years ago, ponding of water on their lands increased annually and remained for

longer periods of time. For the most part, plaintiffs believe the increased flooding of their lands began occurring after a certain ditch was cleaned out. This ditch, which is either a part of or connected to Cottonwood Slough, runs across land referred to as the Bellman tract. This tract is leased to Shirley Moeckel, one of the defendants. In 1971 or 1972, several of the landowners joined together to clean out and remove trees and brush from the ditch. After that time, some of the plaintiffs allegedly saw the Moeckels farm through the ditch or work across it with a tractor and disc. Other plaintiffs testified to a build-up of two to three feet of silt or dirt accumulating in the ditch. Defendants denied any farming or discing through the ditch or any build-up of silt or dirt. Shirley Moeckel testified he, in fact, has worked on the ditch by flaring back the top and sides to halt erosion and has taken dirt out of it when washed from the banks. He further stated he has mowed the ditch three or four times in addition to burning it off a few times. Both sides also presented expert testimony. The trial court found that plaintiffs failed to meet the burden of proof necessary to support their allegations or relief prayed. We note the trial court did not issue any findings of fact with its judgment. We therefore presume the trial court found all issues and facts in favor of defendants. See *National Acceptance Co. v. Pintura Corp.* (1981), 94 Ill. App. 3d 703, 707, 418 N.E.2d 1114, 1118.

Plaintiffs argue on appeal the judgment of the trial court is in error. Plaintiffs believe they are entitled to natural drainage rights in the lands of defendants, and the trial court's order did nothing to preserve or enforce these rights. Plaintiffs, as owners of dominant tenements, are entitled to natural drainage rights in defendants' lands. Plaintiffs simply have not established the need for protection of those rights in this instance.

■■ ■ Under the civil law rule followed in this State, "[w]here water from one tract of land falls naturally upon the land of another, the owner of the lower land must suffer the water to be discharged upon his land and has no right to stop or impede the natural flow of the surface water." (*Gough v. Goble* (1954), 2 Ill. 2d 577, 580, 119 N.E.2d 252, 254. See also *Mileur v. McBride* (1986), 147 Ill. App. 3d 755, 758-59, 498 N.E.2d 581, 583.) The right of the owner of the dominant tenement to drainage stems from the principle that nature has ordained such drainage and "individual ownership arising from social laws should be held in accordance with pre-existing laws and arrangements of nature." (*Gormley v. Sanford* (1869), 52 Ill. 158, 162.) Consequently, the owner of the servient tenement cannot by artificial means obstruct water in its natural flow or otherwise interfere with

the dominant estate's drainage rights. *Geis v. Rohrer* (1957), 12 Ill. 2d 133, 138, 145 N.E.2d 596, 598; *Wessels v. Colebank* (1898), 174 Ill. 618, 624, 51 N.E. 639, 640; *Gillham v. Madison County R.R. Co.* (1869), 49 Ill. 484, 487. See also *Mileur v. McBride* (1986), 147 Ill. App. 3d 755, 758-59, 498 N.E.2d 581, 583.

■■ ■ While the owner of a servient estate may not interfere with the natural drainage from the dominant tenement (see *Geis v. Rohrer* (1957), 12 Ill. 2d 133, 138, 145 N.E.2d 596, 598), he is not required to secure perpetually the owner of the dominant estate's property rights from the adverse forces of nature (*Nelson v. Gundlock* (1983), 120 Ill. App. 3d 117, 121, 457 N.E.2d 1052, 1055; *Savoie v. Town of Bourbonnais* (1950), 339 Ill. App. 551, 559, 90 N.E.2d 645, 650). The owner of the dominant estate, having an easement, is granted the right to go on the servient tenement to clean out or repair the drain. (*Wessels v. Colebank* (1898), 174 Ill. 618, 625, 51 N.E. 639, 641; *Nelson v. Gundlock* (1983), 120 Ill. App. 3d 117, 121-22, 457 N.E.2d 1052, 1054-55.) More importantly, however, the owner of the servient estate is not required to aid or improve the natural flow of surface water from the dominant estate. (*Freeland v. Dickson* (1978), 63 Ill. App. 3d 13, 17, 379 N.E.2d 903, 906.) This is in essence what plaintiffs are asking the trial court to force the defendants to do.

It is evident from the record before us that plaintiffs are the owners of the dominant estates in this controversy while defendants own or work the servient tenements. What is not evident is whether the defendants have obstructed or interfered with plaintiffs' drainage rights. Some of the plaintiffs testified the Moeckels have farmed across the drainage ditch, thereby impeding the flow of water. Defendants denied any such conduct in addition to offering evidence of maintaining the ditch. Shirley Moeckel further explained that after the ditch was jointly cleaned out, he had to disc down the piles of dirt and debris left on the sides of the ditch. The trial court, which is in the best position to resolve contradictory testimony (see, *e.g., Lindberg v. Lemenager* (1979), 73 Ill. App. 3d 623, 627, 392 N.E.2d 382, 385), apparently chose to believe defendants. We find ample support in the record for the trial court's decision. No one testified to seeing any crops growing in the ditch. Other witnesses for defendants testified to observing water flowing through the ditch without impediment and seeing no obstructions. More importantly, both sides admitted rainfall in the area has been heavier in the past few years and water levels higher than normal. Other evidence revealed that several of the plaintiffs had engaged in certain practices which arguably could have increased the amount or rates of surface water draining into Cotton-

wood Slough. And, some of these practices may have actually impeded the flow of water into the slough, thereby causing further backup of water onto plaintiffs' lands. For example, several of the plaintiffs used land levelers on their properties to eliminate ponding and some have either moved or cut additional ditches leading to Cottonwood Slough. Plaintiffs may have the right to engage in such practices (see *Templeton v. Huss* (1974), 57 Ill. 2d 134, 141, 311 N.E.2d 141, 145; *Montgomery v. Downey* (1959), 17 Ill. 2d 451, 461, 162 N.E.2d 6, 12; *Peck v. Herrington* (1884), 109 Ill. 611, 619-20), but they cannot blame defendants for the consequences or require them to accommodate the surplus by widening or deepening the ditch.

█ The record reflects much uncertainty as to the cause of plaintiffs' drainage problems. (Compare *Gough v. Goble* (1954), 2 Ill. 2d 577, 580-81, 119 N.E.2d 252, 254, with *Bossler v. Countryside Gardens, Inc.* (1976), 44 Ill. App. 3d 423, 425-26, 358 N.E.2d 352, 354-55.) Injunctions should only be granted when a plaintiff's right to relief is clearly established. (See *Plasti-Drum Corp. v. Ferrell* (1979), 70 Ill. App. 3d 441, 452, 388 N.E.2d 438, 447; *Whitaker v. Pierce* (1976), 44 Ill. App. 3d 148, 152, 358 N.E.2d 61, 64, *cert. denied* (1977), 434 U.S. 837, 54 L. Ed. 2d 99, 98 S. Ct. 127.) Plaintiffs' right to relief has not been clearly established in this instance. Plaintiffs simply have not established any causal connection between the increased flooding of their lands and defendants' activities, nor have plaintiffs established the existence of any impediments or obstructions to the natural flow of surface water on defendants' lands. The trial court therefore committed no error in not issuing any injunctions against defendants. See, *e.g., Savoie v. Town of Bourbonnais* (1950), 339 Ill. App. 551, 561, 90 N.E.2d 645, 650, 651.

For the reasons stated above, in addition to the judgment not being contrary to the manifest weight of the evidence, we affirm the order of the circuit court of Jackson County in favor of defendants. See *Callahan v. Rickey* (1981), 93 Ill. App. 3d 916, 919-20, 418 N.E.2d 167, 170; *Bossler v. Countryside Gardens, Inc.* (1976), 44 Ill. App. 3d 423, 426, 358 N.E.2d 352, 355.

Affirmed.

KASSERMAN and HARRISON, JJ., concur.