(No. 35282.—

WILLIAM R. EBERLE *et al.*, Appellees, *vs.* WILLIAM J. GREENE *et al.*, Appellants.

*Opinion filed January 22, 1960.*

Harry B. Hoffman, and Hollis W. Benjamin, both of Peoria, for appellants.

Brian & Wilson, of Toulon, and Harry C. Heyl, of Peoria, for appellees.

Mr. Justice Bristow delivered the opinion of the court: .

Defendants appeal from a decree of the circuit court of Stark County ordering them to remove dirt, rock and other materials plowed, graded or deposited by them in, under and along a division fence and to restore the elevation of the ground thereunder as it existed in 1947 and perpetually enjoining them from thereafter raising or altering the same, and further ordering them to remove an artificial dam from a natural watercourse and perpetually enjoining them from placing in the watercourse a dam which obstructs or interferes with the natural flowage of the surface water therein. Defendants' answer and counterclaim involves the question as to whether defendants' land is subjected to a perpetual easement of drainage in favor of plaintiffs' land so that plaintiffs may cast their surface water upon and across defendants' land. A freehold is therefore involved. The appeal was properly taken directly to this court. *Saelens* v. *Pollentier,* 7 Ill.2d 556.

No questions are raised on the pleadings. The defendants allege four errors for reversal, *viz.:*

(1) that the record clearly shows that plaintiffs have not acquired a drainage easement over defendants' land;

(2) that both the special master in chancery and the lower court failed to pass upon material issues which were raised by the pleadings and supported by the evidence;

(3) that the special master's fee, approved by the chan-

cellor in the amount of $5,404,70, was grossly excessive, and

(4) that the taxing of 75% of the court costs, including the master's fee, against the defendants was completely inequitable under the facts of this case.

Plaintiffs own 240 acres of farm land, referred to as tract 1, described as the southwest quarter (SW¼) and the south half (S½) of the northwest quarter (NW¼) of section 27, Valley Township, Stark County, Illinois, which they acquired in 1941. Defendants own an adjoining 160-acre farm, designated as tract 2, described as the north half (N½) of the northeast quarter (NE¼) and the north half (N½) of the northwest quarter (NW¼) of the same section, which they acquired in 1947.

The complaint was filed by the owners of tract 1 to enjoin the owners of tract 2 from maintaining any obstructions along their common division fence which would prevent the drainage of surface water from tract 1 to and across tract 2. Defendants denied that any drainage easement existed across their lands and alleged in their counterclaim that they had acquired a prescriptive right to have both the surface and subsurface water from tract 1 flow to the northwest corner of tract 1 and into a road ditch specifically constructed for this purpose without passing over any portion of tract 2.

The chancellor, after a hearing on the special master's report and the exceptions thereto, filed by both parties at which no additional testimony was presented, approved the master's report and entered a decree in accordance with his findings and recommendations.

Plaintiffs have not appealed from the decree which orders them to cease discharging subsurface water on tract 1 at any point in or on tract 1 in such a manner that said subsurface water, gathered and discharged as surface water, might, or could or would flow from tract 1 onto tract 2 as surface water; perpetually enjoins them from so

doing, orders them to remove the obstructions placed in the roadside fence; perpetually enjoins them from obstructing and altering the flow of surface water from tract 1 through the roadside fence line, and decrees that neither the plaintiffs nor the defendants are entitled to have or to recover damages from the other as claimed and set forth in their respective pleadings.

The following drawing will aid in the understanding of the facts in this case:

Prior to 1903 that portion of the northwest quarter aforesaid, lying north of the pond line shown on the above map, was inundated. This area was drained by the artificial open ditch constructed in 1903, in which year the 8-inch

farm tile shown along the north side of the south half of said northwest quarter was laid.

The proof is uncontradicted that the surface water normally flowed west, south of the division fence from a point more than 90 rods east of the public highway to the highway. Normally, this surface water has run under the division fence at a point 6 rods east of the public highway, thence west and northwesterly across tract 2 to the east roadside ditch. From there it either ran north along the east roadside ditch or through an 18-inch culvert constructed opposite the division fence line across the public highway to the open ditch.

Subsequent to 1947 plaintiffs laid a 10-inch tile from the interior of tract 1 across the 8-inch tile to a point 10 rods south of the division fence and 90 rods east of the road fence where the tile was joined to a 75-foot metal tube laid near the surface. A small dam was built over this pipe west of the east end thereof, and a dam was built by the plaintiffs at least 100 rods south of the division line and near one of the tributary tile emptying into the 10-inch tile. At the east end of the metal pipe subsurface water was discharged and commingled with surface water, and the same flowed across the division fence line into the draw until the defendant constructed a rock dam 5 feet high across said draw which resulted in stopping the normal flow of surface water through this opening in the fence. The record shows that the fence row was raised since 1947 by the defendants by grading dirt thereon and by placing obstructions in openings thereunder. The record also shows that prior to the raising of the height of the fence row it was normal for surface water to flow through the fence row from tract 1 to tract 2 in several places, and that at all times surface water flowed from tract 1 to the roadside ditch, except where obstructions placed by plaintiffs therein impeded the flow thereof, and at all times from tract 2 to the roadside ditch.

Defendants contend that plaintiffs have changed the drainage system, which has existed on tract 1 since 1903, so as to force the tract 1 surface water through the division fence and onto tract 2, claiming that the natural drainage of surface water from tract 1 is along the north side thereof to the road and that defendants have acquired a prescriptive right to be free from surface water from tract 1 and to maintain a division fence row higher than the adjoining lands. The evidence shows that since 1947 the elevation of the ground on the division fence line was raised by defendants by grading and plowing dirt upon this area which tends to restrict the flow of surface water. Defendants admit that in May, 1950, they put stone in the draw on the north side of the division fence at the 90-rods point near the outlet of the tile laid by plaintiffs.

The master found from the testimony and exhibits in the record that the natural contour of tract 1 caused the surface waters thereon to flow in a northerly and westerly direction in natural water courses; that for more than 20 years prior to 1950 a part of the surface waters, flowing in the depression along the south side of the division fence and a depression located 90 rods east of the road, has flowed under the division fence in a depression having width and depth and thence has flowed across tract 2 to the westerly and to the northwesterly parts thereof, to an established drain; that the level of the fence row was raised by unobjectionable causes until 1947, after which time defendants wrongfully increased the elevation thereof by grading and plowing dirt onto the fence row and built a dam in the depression located 90 rods east of the road.

The master concluded that the defendants had failed to establish, by competent proof, any one of their affirmative defenses. With this we agree.

After a careful analysis of the record, we have concluded that we are unable to agree with defendants that plaintiffs have not acquired an easement for the drainage

of surface water from the dominant tract 1 over the servient tract 2.

Plaintiffs have the right to have the flow of surface water continue, unimpeded by any obstruction. (*Saelens* v. *Pollentier,* 7 Ill.2d 556; *Gough* v. *Goble,* 2 Ill.2d 577.) It is obvious that defendants in 1947 began grading dirt on the fence row and built the dam in the depression for the purpose of impeding the flow of surface water from tract 1 and tract 2. This marked the beginning of the difficulties between these neighbors. When plaintiffs undertook a peaceful settlement they were met with profanity and threat of violence.

Defendants complain that the special master made no findings and recommendations concerning other dams and obstructions that plaintiffs were alleged to have wrongfully constructed in their systematic attempt to flood tract 2, and that the decree omits any relief for defendants from the continuance of such obstructions.

Plaintiffs have the right to build a dam on their land as long as such obstruction does not impede the flow of surface water on the land of others or change a natural course of drainage. The record does not establish that the inland dam, constructed about 100 rods south of the division fence, violated either of these conditions. There is no showing that relief against future trespasses is required by defendants. There is a finding that defendants are not entitled to damages for any acts of the plaintiffs complained of by the defendant.

Defendants argue that the order to restore the division fence row to the conditions existing in 1947, without a finding in the decree as to what these conditions then were, lacks the certainty required of final judgments and both invites and requires further litigation to construe its meaning before compliance with the mandatory injunction can be accomplished. Defendants' position is that they have a right to protect tract 2 by placing dirt and other material

in these depressions so as to maintain the conditions that had theretofore existed.

We believe the findings set forth in the decree are sufficiently clear to inform the defendants that all material placed by them on the fence row since 1947 must be removed. They well know what is contemplated by this order.

As to the master's fee, we recognize that a considerable amount of time and work was required to hear and report the evidence and make recommendations thereon, nevertheless, we are of the opinion that the charges in the sum of $5,404.70 were excessive. Reducing the master's fee by $1,000 and the stenographic cost by $500, leaves a total of $3,904.70 which we consider more reasonable.

There was justification for the taxing of 75% of the court costs, including the master's fee, against defendants and the remaining 25% against the plaintiffs. We find no other error than the allowance of excessive fees, so the decree entered herein will be affirmed, although the decree will be reversed and the cause remanded with directions to the lower court to modify the decree to conform to our views expressed concerning the charges made by the master.

*Affirmed in part and reversed in part
and remanded, with directions.*