DR. LESLIE E. LINDBERG, Plaintiff-Appellant, *v.* BERYL LEMENAGER *et al.*,
Defendants-Appellees.

Third District    No. 78-290

Opinion filed July 11, 1979.

Charles E. Ruch, Jr., of Nutting, Thacker, Sacks and Paulauskis, of Kankakee,
for appellant.

Ivan Looker, of Watseka, for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Plaintiff Dr. Leslie E. Lindberg appeals from a judgment of the
Circuit Court of Iroquois County denying relief requested in his
injunction action against defendants Beryl Lemenager and Jeanette
Raymond. Defendants Lemenager and Raymond own adjoining tracts of
farmland in Iroquois County and plaintiff Lindberg's farmland adjoins
defendant Raymond's farmland as well.

The record indicates that in the spring of 1977, defendants' farm
tenant, Irving Lemenager, husband of defendant Beryl Lemenager, cut a
"plow furrow" or small ditch on Raymond's land to aid in surface water

drainage of defendants' lands. This plow furrow was designed to divert water in a northerly direction so as to empty into another drainage ditch, which would carry the surface water easterly from Raymond's property onto plaintiff Lindberg's property. That ditch then empties any waters into the drainage ditch on the easterly edge of plaintiff's property.

Plaintiff Lindberg initiated the present injunction action to have the court order defendants to fill up the plow furrow which was made in April 1977 on Raymond's property and to otherwise cease from diverting water drainage from the natural drainage pattern. After hearing the evidence, much of which was contradictory on important matters, the trial court made its decision, finding that plaintiff had failed to prove any increase of flow or likelihood of irreparable harm for which an injunction might issue. Alternatively, the trial court held that any increase which might occur was within a reasonable use exception to the basic rule of surface water drainage. See *Templeton v. Huss* (1974), 57 Ill. 2d 134, 311 N.E.2d 141.

Three issues are raised by plaintiff as a result of the denial of relief by the trial court: (1) whether the trial court's findings with respect to the plaintiff's failure to prove the elements necessary for injunctive relief were against the manifest weight of the evidence; (2) whether the trial court's use of the view of the premises was improper; and (3) whether the trial court, in its alternative holding, applied the correct rule of drainage law.

A review of the record also discloses the following pertinent information. Plaintiff Lindberg is the owner of 80 acres of farmland in Iroquois County and defendant Raymond owns 40 acres of farmland directly west of plaintiff's 80 acres. Defendant Beryl Lemenager owns 40 acres directly west of defendant Raymond's land. The general flow of surface water drainage is from west to east, thus, from defendants' lands onto that of plaintiff Lindberg. The defendants' lands are farmed by their tenant, Irving Lemenager, who also farmed Lindberg's 80 acres prior to the time Lindberg purchased the property in February 1977. The warranty deed to Lindberg given on October 12, 1976, and recorded on March 2, 1977, contains a pertinent provision with respect to surface water drainage. The 80 acres conveyed to Lindberg were conveyed subject to the following express condition:

> "The express condition, which shall be a covenant running with the land, that the present flow line of the surface waterway, the center line of which curves across said real estate from a point approximately 700 feet South of the Northwest corner thereof to a point approximately 681 feet East of the Northwest corner thereof * * * shall be maintained to provide drainage for the West Half (W½) of said Quarter Section."

This waterway, or covenant ditch, identified in the deed, runs from Raymond's land across plaintiff Lindberg's property and then connects with a public road ditch on the north edge of plaintiff's property. It was last maintained, so far as the record shows, in the fall of 1976, when the tenant at that time (Irving Lemenager) cut a swale across the flow line of the waterway on both properties. This drainage waterway, being a covenant running with the land, will hereafter be referred to as the "covenant ditch."

By April 1977, plaintiff Lindberg had obtained possession of the property. Lindberg did not continue to rent to Irving Lemenager but leased to George Boudreau. In April of 1977, Boudreau notified Lindberg that a ditch was under construction on defendant Raymond's property. This ditch, the subject of the present suit, lies entirely on Raymond's property near to plaintiff Lindberg's west boundary line and it runs in a north-south direction, the fall being in a northerly direction. The ditch, or really "plow furrow" (as it was referred to in the trial court and will hereafter be referred to as well), acts to direct any water into the part of the covenant ditch which lies on Raymond's property. The plow furrow of April 1977 thus joins the covenant ditch, but does so on defendant's property, not on plaintiff Lindberg's property. There was conflict in the evidence as to the manner in which the plow furrow was dug and as to its dimensions. Several witnesses for the plaintiff, including Lindberg himself, testified that the plow furrow was a ditch three to four feet wide and a foot to a foot and a half in depth. Other testimony, including the testimony of the plaintiff's own expert witness, put its depth as varying from three inches at the southernmost point to nine inches at the northernmost point. The trial court, after hearing the evidence, and after viewing the property, found that the depth was minimal and stated it to be from three to nine inches as found by plaintiff's own expert witness and as testified to by Irving Lemenager, who had plowed the furrow. The court expressly rejected the testimony of plaintiff's witnesses who had indicated the depth was near to a foot and a half.

Plaintiff's principal evidence as to potential damage from the plow furrow came from Richard Tyson, an engineer and land surveyor in Illinois. Tyson testified as to relationships between drainage erosion and such variables as soil permeability and the quantity and intensity of rainfall. Tyson testified that under certain conditions, the diversion of water from defendants' lands onto plaintiff's land could cause erosion of the topsoil, and flooding, thus greatly reducing the agricultural use and productivity of plaintiff's farmland. We must note, however, with respect to this evidence as to damages, that the evidence was totally speculative and focused upon potential damages given existing rainfall patterns.

Plaintiff's own witness, George Boudreau, testified that no crops were lost in 1977 and that the yield on Lindberg's property was 47 to 48 bushels of corn an acre. Plaintiff explained such yield and lack of damage by noting that 1977 was a dry year. The applicability of Tyson's testimony as to potential damage is that, as the record establishes, Tyson's speculations are premised upon a ditch that is a foot and a half to two feet in depth. In view of the finding of the trial court, supported by the evidence, the plow furrow was at most nine inches deep, the premise underlying Tyson's conclusions is clearly inaccurate with respect to the lands at issue in the instant case. We note that Tyson also testified that when he observed the property there was some erosion and silting, but he did not specify or elaborate on those conclusions, and it appears from the record that the point of erosion mentioned was where the plow furrow joined the covenant ditch, thus on defendant Raymond's property.

■■ At the close of all the evidence, on the joint motion of the parties to this cause, the trial judge, accompanied by counsel, took a view of the premises. After hearing the witnesses and viewing the property, as we have noted, the court found that the plow furrow complained of was minimal and not the size contended by plaintiff. The court also found that plaintiff had failed to prove any increased water flow resulting, or which might result from the furrow. Alternatively, the trial court found that any increase in the flow that might occur as a result of diversion of water upon defendants' lands was reasonable and acceptable under good husbandry exception to the civil law rule of surface water drainage. The trial court found that the plaintiff failed to prove that the construction of the plow furrow on the Raymond land caused an increase in the flow on the land of plaintiff and that such assertion would be contrary to the manifest weight of the evidence. We believe that the court's decision on this issue is supported by the record.

As heretofore noted, the only substantial evidence of an increased flow resulting in damage to plaintiff's property was the speculative testimony of witness Tyson, plaintiff's expert witness. As we have noted earlier, this testimony as to possible erosion and flooding assumed a ditch with a depth far in excess of what other evidence indicated as to the plow furrow. Plaintiff Lindberg and his tenant farmer had testified that the ditch was close to a foot and a half in depth. This testimony was not only directly contradicted by Irving Lemenager, but also by Tyson's own topographical map of the land. Both Tyson and Lemenager put the depth of the furrow at around 9 inches at its greatest. The court expressly noted Tyson's map and its findings of fact and that when it made its view, the land had not been altered since the original ditch was made and that it was visible at the time of the view.

Where contradictory factual testimony is given, the trial court normally is in the best position to resolve such testimony and in this case, with the aid of the view of the premises, the court was in a particularly advantageous position to determine the crucial factual issue as to the size of the plow furrow on Raymond's land. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356, 226 N.E.2d 624.) We, therefore, find no error in the findings of the trial court with respect to the size of the plow furrow.

Given the size of the plow furrow, the Tyson testimony as to dire consequences of a ditch close to two feet in depth was not pertinent to the issue involved and did not establish a basis for injunctive relief as prayed for by the plaintiff. Plaintiff's tenant, George Boudreau, testified that no crops were lost in 1977, and, also, testified that when he chisel-plows his fields he leaves grooves six to eight inches in depth. It was clear that there was no evidence of damage currently, and the speculations as to damage in the future are not supported by the factual elements as to the depth of the plow furrow.

The plaintiff next contends that the trial court erroneously used its view of the premises as evidence in the case, specifically as evidence to impeach plaintiff's evidence as to the size of the plow furrow. The plaintiff argues that such use of view violated the rule that the sole purpose of the view is to help the court better understand the evidence. (See *Lancer Industries, Inc. v. City of Aurora* (1975), 30 Ill. App. 3d 962, 963, 333 N.E.2d 653.) In reviewing the findings of fact by the trial court, we find that it did not use its view of the premises (a view jointly urged by the parties) to insert new evidence in the case. The findings of fact contained in the record before us are not based on evidence gathered as a result of the court's view of the premises. It is clear that the view taken by the court supported evidence already before the court on the contradictory question as to the size and nature of the plow furrow. Thus, the view was used by the court to better understand and weigh the evidence that had been presented and which was already before the court in the record. It was not new evidence found during the view that impeached plaintiff's evidence, but other evidence, including the map by plaintiff's own expert, which was properly in the record supporting defendants' evidence. We find no abuse of discretion in the court's use of the view of the premises which it was requested to make by both parties.

■■ The final issue raised by plaintiff is whether the court applied the wrong rule of surface water drainage in this case. While our disposition of the first two issues obviates any necessity of meeting this issue, involving as it does the alternative holding of the court, we believe we should briefly address the question. Plaintiff argues for a rule of law which would make any diversion of surface water from the natural flow a

presumptively illegal act. We note, at this time, that any diversion in the present case was initially upon defendants' own lands and that such diversion was then into the covenant ditch, which, according to plaintiff's deed, was a drainage waterway for defendants' lands. In the circumstances of the present case, involving a plow furrow not much greater than furrows left during normal plowing, the rule of law urged by plaintiff would make even the plowing of a field, which causes some diversion of the natural flow of surface water, a presumptively illegal act. Such a rule has its antecedent in the strict civil law rule which forbade any change in existing natural drainage. That rule has long ago been modified in Illinois, by a so-called husbandry exception, where interference with natural drainage has been allowed if it is limited to that which is incidental to the reasonable development of the dominant estate for agricultural purposes. The rule to be applied in Illinois was stated accurately and concisely by Mr. Justice Schaefer in the Illinois Supreme Court case of *Templeton v. Huss* (1974), 57 Ill. 2d 134, 141, 311 N.E.2d 141:

> "The question which must be confronted is whether the increased flow of surface waters from the land of the defendants to that of the plaintiff * * * was beyond a range consistent with the policy of reasonableness of use which led initially to the good-husbandry exception."

That rule quoted almost verbatim in the trial court's opinion which it applied when making its alternative holding in the instant case, also denied the relief requested by plaintiff. Had plaintiff met his burden with respect to increase in flow and damages, then that rule could have been applied alternatively. We have, however, determined, as did the trial court, that plaintiff failed to meet his burden of proof on the basic issues of increase in flow and damages.

For the reasons stated, therefore, we affirm the decision of the Circuit Court of Iroquois County in this cause.

Affirmed.

STOUDER, P. J., and STENGEL, J., concur.