HARRY EHRHART *et al.*, Plaintiffs-Appellants, *v.* DARYL W. REID *et al.*, Defendants-Appellees.

Third District   No. 78-314

Opinion filed July 16, 1979.

Thomas W. Dye and Michal J. Karson, both of Macomb, for appellants.

S. David Simpson, of McLaughlin, Hattery and Simpson, of Galesburg, for appellees.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Plaintiffs Harry and Vera Ehrhart appeal from a judgment of the Circuit Court of McDonough County which is adverse to plaintiffs in an action for injunctive relief and damages against defendants Daryl and Ella Reid.

The parties to the action own adjacent farms in McDonough County in this State. In 1976, the defendants Reid constructed a ditch on their farm property for the purpose of channeling surface water off portions of the farm. Thereafter, the Ehrharts instituted the current action against the Reids, alleging that as a result of the construction of the ditch, there was an increase in the quantity and velocity of water reaching their adjacent property. In the action they sought injunctive relief to require that defendants cease any increased discharge of water into the property of the Ehrharts and, also, for damages asserted to result from a decrease in the market value of the portions of the Ehrhart farm by reason of the alleged increased water discharge.

The trial court, after hearing the evidence, a great deal of which was contradictory, found that the plaintiffs had failed to prove that the ditching was the proximate cause of any increased water flow. Alternatively, the trial court observed that even if there were found to be a causal relationship, the increase in flow, if any, was for a beneficial agricultural purpose on the dominant premises and reasonable in its extent, thus not giving rise to liability for damages incurred by the servient estate. See *Templeton v. Huss* (1974), 57 Ill. 2d 134, 311 N.E.2d 141.

On appeal in this case, two issues are raised by the plaintiffs: (1) whether the court erred in finding a lack of proximate cause between the ditching and any damage to plaintiffs' land and (2) whether the court erred in its construction and application of the applicable rule of law as to surface water drainage.

The record discloses that in the area with which the case is concerned, there is a township highway which runs east and west. The Great Northern Railway right-of-way coming from north of the township highway intersects the township highway at a right angle and then proceeds on directly south through the area involved in the instant case.

The railroad right-of-way is approximately 100 feet wide and separates plaintiffs' farm from defendants' farm. Plaintiffs' farm lies immediately east of and adjacent to the railroad right-of-way and the defendants' farm lies immediately west of and adjacent to the railroad right-of-way. The south line of the east-west township highway forms the north boundary of each farm. The railroad track is situated on an

embankment which runs down the center of the right-of-way, and approximately 3700 feet south of the township highway, the railroad track spans a three-bay bridge.

The parties agreed at the trial that, even prior to the ditching at issue in this case, the surface water entering upon defendants' land north of the railroad bridge would, in following the normal course of surface drainage, flow southerly and eventually back easterly so as to reach a draw or depression on defendants' land immediately opposite the three-bay railroad bridge. The surface water which had not been absorbed into defendants' land would then flow easterly from defendants' farm out across plaintiffs' farm to the east. The draw proceeding from the railroad bridge on across plaintiffs' land runs first easterly, then southerly, then southwesterly to a place where it exits plaintiffs' farm at the southwest corner of their farm. It is clear that the defendants' farm was and is the dominant premises and that plaintiffs' farm was and is the servient premises with respect to surface water drainage on the farms.

In 1975, the defendants Reid installed an underground tile system on their farm to meet a surface water problem which they faced. That tile system, according to witnesses for the defendants, had the effect of reducing the amount of water which had previously flowed from the Reids' land onto the Ehrharts' land. Despite the tile system, however, the defendants Reid found that surface water continued to be a problem on their farm, preventing maximum agricultural development and use of some portions of the farm and creating problems with their drinking water.

The defendants' farm (as a servient premises in that instance) receives surface water runoff from at least 400 acres of land lying generally to the north of their farm. Most of the water first enters a ditch on the south side of the east-west township highway through a culvert under the highway approximately 200 feet west of the railroad right-of-way. Prior to the ditching (which is at issue in this cause), when the township ditch filled up with runoff surface water, the water spilled over southerly onto defendants' farm and the excess of water eventually reached plaintiffs' property by way of the draw under the railroad bridge.

In September 1976, the defendants Reid constructed a ditch designed to divert a portion of this excess water from their farm. That ditch begins at the south edge of the east-west township highway at a point approximately 150 feet west of the railroad right-of-way, and from this point of beginning it runs east approximately 150 feet to the railroad right-of-way, and then it turns south and proceeds south on and along the west side of the railroad right-of-way, where it connects with the draw which goes under the railroad bridge down to the area immediately opposite the west side of the railroad bridge. It is notable that, even with the new

ditch, water from defendants' land to plaintiffs' land leaves defendants' land and enters plaintiffs' land at the same point as did the surface water runoff prior to the ditching in 1976.

The facts, so far as they have hitherto been set forth, are not disputed by the parties. The principal area of contention in the evidence was with respect to the nature and extent of the water flow as a result of the ditching by the defendants in 1976. Plaintiff Harry Ehrhart testified that the ditching which was made by defendants had significantly increased both the quantity and velocity of water reaching his property, which is specifically disputed by defendants. Ehrhart asserted that the increases resulted in substantial damage to his land. He states that the damage was caused by erosion and by an increase in the moisture content of the soil, preventing agricultural use to the extent previously possible. He contends that the damages totaled $37,500. The evidence offered in support of the allegations made by plaintiffs consisted principally of the testimony of Harry Ehrhart. In that testimony he noted that a heavy rain, which occurred on May 4, 1977, created the kind of flooding conditions on his farm about which he complains and for which he seeks compensation in damages. He stated that the rain of May 4, 1977, measured 2 inches (disputed by defendants) and that an area of 6 or 7 acres of his property was covered with water for 1 day as a result of rain, and that an area of 5 or 6 acres was covered for a week. In addition, he contends, that as a result of the wetness, an additional 18 acres was not drained properly and remained wet.

Ehrhart conceded that he had seen such flooded conditions on his property before, over his 30 years on the farm, but he contended that such previous flooding occurred only after a rain much heavier than that of May 4, 1977. He said that prior to the ditching, it would have taken a rain of three to four inches to create flooding such as occurred from the May 4 rain. Ehrhart also testified that his property was similarly flooded from other rains during 1977. He concluded that his farm receives at least 75% more water in any given rainfall than was the case before the ditch was installed.

A farm appraiser also testified on behalf of the plaintiffs. In addition to his testimony as to the market value of the farmland, the appraiser indicated that he had been familiar with the property and that he had visited the farm on three occasions since the ditching, one such occasion following a rain. He testified that on that visit, in the fall of 1976, he observed flooding on the farm worse than during any flooding conditions. he had previously seen. He also stated that the water was moving through the railroad bridge bays rapidly.

The defendant Daryl W. Reid, and his witnesses, stated that the ditching had only a minimal effect upon the volume and velocity of the

water reaching the Ehrhart farmlands. The drainage engineer who had drawn the plans for the ditch testified that the rate of fall for the ditch was 1.4 feet per thousand feet of length and that with such rate, the ditch would increase the rate and volume of water very little, if at all. He testified that there would be no problem with erosion in maintaining the ditch, but rather a problem in keeping the ditch, with its slight fall, free of vegetation and silt. An engineer from the Soil Conservation Department of the United States Department of Agriculture also testified on behalf of defendants. That engineer testified that there was no way that the ditch would have increased the quantity of water into or out of defendants' property and that defendants' actions could not have diverted water onto the Ehrhart property which would not have otherwise gone there. The engineer stated that the ditch might carry approximately 10 percent of water from any given storm. He corroborated also that a ditch with a fall of the Reid ditch was well below erosion velocity.

Daryl Reid, a defendant, testified that he observed the spring rains specified by plaintiff Ehrhart and that they were of unusual intensity. This fact was confirmed, in part, during cross-examination of Ehrhart, who stated that the first half hour of the May 4, 1977, rain was as intense as any he had ever seen on his land. Ehrhart also admitted that during his 30 years on the farm, he had 7 or 8 acres of ground covered over by standing or moving water numerous times. Daryl Reid, defendant, also testified, on direct examination, that nearly 5 inches of rain fell during the early part of May 1977, the spring rain referred to by Ehrhart as being a 2-inch rain. Reid's testimony also was that during the early hours of that rain, the ditch was carrying about one-twentieth of the surface water and that his tiling system actually diverted some water away from the Ehrhart farm and that from his personal observation, the movement of water in the ditch was slow.

■■ After hearing the evidence, which has been summarized briefly, on the question of causation, the trial judge determined that plaintiffs had not met their burden of proving by a preponderance of the evidence that the ditching had caused an increase in the volume or velocity of the water reaching the Ehrhart property. As a court of review, we are required to give credence and support to the determination of the trial court in the state of the record in this cause. As stated by the Illinois Supreme Court in *Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356, 226 N.E.2d 624:

> "Although a trial court's holding is always subject to review, this court will not disturb a trial court's finding and substitute its own opinion unless the holding of the trial court is manifestly against the weight of the evidence. [Citations.] Underlying this rule is the recognition that, especially where the testimony is contradictory, the trial judge as the trier of fact is in a position superior to a court

of review to observe the conduct of the witnesses while testifying, to determine their credibility, and to weigh the evidence and determine the preponderance thereof. We may not overturn a judgment merely because we might disagree with it or might, had we been the trier of facts, have come to a different conclusion." From our review of the evidence in the record, it is apparent that the judgment of the trial court is adequately supported in the record and that his determination is clearly not contrary to the manifest weight of the evidence in this cause.

In view of our determination, we find it unnecessary to address the second issue raised by defendants concerning the construction and applicable rule of law with respect to certain water drainage of farmland, referred to alternatively by the trial court.

For the reasons stated, therefore, the judgment of the Circuit Court of McDonough County is affirmed.

Affirmed.

STENGEL and SCOTT, JJ., concur.