LAVERNE N. BROWN *et al.*, Plaintiffs-Appellees, *v.* EMILE PONTON *et al.*,
Defendants-Appellants.

Third District    No. 79-353

Opinion filed January 24, 1980.—Rehearing denied February 25, 1980.

Michael R. Berz and Alan F. Smietanski, both of Berz, Morgan & Smietanski, of Kankakee, for appellants.

Gregory A. Deck, of Petersen & Deck, and James P. Collins, both of Kankakee, for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:
The defendants, Emile Ponton, Myrtle Ponton, Alfred Ponton, and

Joyce Ponton, appeal from that portion of a mandatory injunction entered by the Circuit Court of Kankakee County which required them to remove fill from their properties in order to re-establish natural drainage off plaintiffs Laverne and Dolores Brown's properties. The Browns, owners of four lots adjoining properties owned by the defendants, had brought suit seeking an injunction to require the defendants (1) to remove an earth and rock dam constructed between the properties, (2) to re-open a four-inch drainage tile under their land which drained plaintiffs' land, and (3) to remove all fill which had been placed upon defendants' lands. After a bench trial, the court granted the requested relief. On this appeal, the defendants do not contest the parts of the mandatory injunction requiring them to remove the dam and to re-open the drainage tile. The only issue raised is with respect to the order to remove all fill. They allege error with respect to this portion of the injunction and argue that removal of the fill was not shown to be necessary. They argue further that the evidence does not support a finding that the fill caused the injuries to plaintiffs and assert that its removal would impose a great burden upon defendants.

The record discloses that the defendants and plaintiffs own adjoining lots in a subdivision. The Browns own Lots 1, 2, 3 and 4 of Block 5 of the subdivision. Emile and Myrtle Ponton own Lots 6 and 7, while Alfred Ponton owns Lot 8 and Joyce Ponton owns Lot 5. Plaintiffs' lots lie southwesterly of the four lots owned by the defendants. The natural course of surface water drainage is from Lots 1, 2 and 3 onto Lots 6, 7 and 8 and then onto Lot 5, which also receives drainage water from Lot 4. Prior to actions taken by defendants on their properties, the water coming from the properties would drain into a swale on Lot 5 and from there it continued in a swale moving northeasterly, eventually entering the nearby Iroquois River. It is noted that a portion of the water on the southern part of Lot 5 would drain off into a road ditch east of the lot and would not pass on defendants' Ponton properties. The natural drainage pattern had been supplemented through the years by the installation of two drainage tiles. A 12-inch drain tile runs underground along the swale located on Lot 5, and it empties into a road culvert on the northern line of that lot. There is also a 4-inch drain tile which begins on the Browns' Lot 4 and then runs through Lot 5, finally emptying into the 12-inch tile on that lot.

According to the testimony in the record, Emile and Alfred Ponton had periodically added fill to Lot 5 since the 1950's, although the majority of the fill had been placed upon the lot in the last seven to eight years. The fill has eliminated the swale that once carried drainage water from plaintiffs' adjoining lots, and it has substantially leveled the ground of Lot 5. Soil borings indicated fill up to five feet in depth at places on Lot 5. Fill

was also added to Lots 6, 7 and 8. Soil borings on those lots indicated fill depths ranging from 6 to 18 inches. Plaintiff Laverne Brown testified that in 1974 he had to construct a retaining wall in his basement as a result of water backup problems on Lot 4, adjoining defendants' Lot 5. He testified that water which would have normally run off of his Lot 4 would back up onto the lot. He experienced seepage problems in his basement which necessitated the construction of the retaining wall. Seepage problems also were the reason that the Browns raised their basement door a foot. The Browns' water problems occurred chiefly after heavy rains. There was also testimony by both Mr. and Mrs. Brown that during 1974 and 1975 they began to experience problems with standing water on their other lots.

In May 1975, Emile Ponton cut and blocked the 4-inch drain tile running from the Browns' Lot 4 onto and across their Lot 5. As a result, during wet periods the Browns began to experience problems with their septic system. During the three years prior to trial, beginning in 1976, the defendant Pontons gradually constructed an earth and rock dam, eventually a foot wide, on their southern property lines along Lots 6, 7 and 8. The dam, which borders plaintiff Browns' Lots 1, 2 and 3, is up to 10 inches higher than the Brown property. As a result of the construction of the dam plaintiffs' standing water problems have increased considerably.

Two expert witnesses who testified at trial indicated that the dam along the southern line of defendants' lots prevents water from running off the Browns' property as it would naturally. One expert witness, Richard Tyson, testified that the effect of the dam was to saturate the soil on Lot 4, making it less permeable for septic purposes. Tyson also testified that a result of the filling of the swale on Lot 5 was that the water table on Lot 4 was now maintained at a higher level than previously. Tyson also testified that the swale on Lot 5 was a central feature of the natural drainage pattern of these properties.

After hearing the evidence, the trial court made findings of fact. It found that the 4-inch tile had been cut off by Emile Ponton and that such action caused injury to the plaintiffs. It found that the earth dam obstructed the natural flow of surface water, causing water to stand and remain for long periods of time on plaintiffs' properties. It found that the filling of the swale on Lot 5 and the filling on Lots 6, 7 and 8 had been done for the purpose of obstructing the natural flow of surface water and that the filling has had the effect of obstructing drainage, causing standing water on plaintiffs' properties. The trial court ordered the 4-inch tile to be re-opened and the earthen dam to be removed. It also ordered the Pontons to remove the fill and return their lots to their previous states so

that natural drainage would be restored. As an alternative to the removal of the fill, the court's order stated that the defendants could establish drainage swales on their property in accordance with a plan drawn up by one of the expert witnesses. The court also perpetually enjoined the defendant Pontons from future filling, damming, or other obstructionist tactics which would alter the flow of drainage water off plaintiffs' properties.

As already noted, the only issue raised by the Pontons on appeal is whether the court erred in ordering the removal of all fill that had been placed on their lots. The Pontons allege that the removal of the fill would cost great sums of money and that the alternative, the construction of specified swales, will largely deprive them of the use of their properties. They argue that such hardship ought not be visited upon them unless the evidence establishes that the fill was the clear and direct cause of the drainage problems experienced by plaintiffs. (*Delano v. Collins* (1977), 49 Ill. App. 3d 791, 364 N.E.2d 716.) They then argue that the evidence in the record does not support the court's finding that the fill was the cause of the drainage problems experienced by plaintiffs. They argue that the removal of the dam and the opening of the tile will solve the plaintiffs' problems.

■■ The evidence in the record, largely uncontradicted, is that the standing water and seepage problems of the plaintiffs began in 1974, some year and more before the shut-off of the tile and the construction of the dam. Laverne Brown testified that water backed up in 1974 and caused seepage problems in his basement. It was in response to this problem that he put in a retaining wall and raised his basement door a foot. This was clear evidence showing a connection between plaintiffs' problems and the filling of defendants' properties. There was also testimony from both Mr. and Mrs. Brown that some standing water problems on their other lots began four to five years before the trial, thus before the dam or cut-off of the tile. In addition, there is the testimony of expert Richard Tyson that the use of the fill has the effect of raising the water table on Lot 4. Contrary to defendants' conclusion that the latter testimony says nothing about standing water, it is obvious that if the water table is raised, the result logically is a greater increase in standing water after rains, since there is less soil available to absorb that water. We conclude that the clear evidence in the record supports the court's factual finding that the filling on Lots 5, 6, 7 and 8 has had the effect of obstructing the natural drainage off plaintiffs' lands and has caused standing water on their properties to their injury. As we have noted recently in similar cases, the trial court is in the best position to make factual determinations as to causation in drainage cases. (*Ehrhart v. Reid* (1979), 73 Ill. App. 3d 824, 392 N.E.2d 435; *Lindberg v. Lemenager* (1979), 73 Ill. App. 3d 623, 392 N.E.2d 382.) We find that the trial court's decision in the instant case that the fill caused injuries to plaintiffs is supported in the record.

●■■ Given the adequate support in the record for its finding, the court was properly authorized to issue an injunction requiring defendants to remove the fill. Monetary damages are clearly inadequate to compensate the plaintiffs for the continuing injuries caused by the fill on defendants' properties. The defendants are not in a position to successfully argue the balancing of equities or costs where they presented no evidence in the case as to the costs of removing the fill. We will not presume, without any support in the record, that such removal will be prohibitively expensive and unjust to them. Additionally, we note that the trial court correctly found that the defendants' actions were intentionally taken in order to obstruct the natural drainage pattern with a resultant detriment to plaintiffs. Under the circumstances, the court's entry of a mandatory injunction requiring defendants to remove all obstructions was proper. Reviewing courts have often rejected cost of compliance arguments in similar situations. *Eberle v. Greene* (1960), 18 Ill. 2d 322, 163 N.E.2d 822; *Deterding v. Central Illinois Public Service Co.* (1924), 313 Ill. 562, 566; *Hild v. Avland Development Co.* (1977), 46 Ill. App. 3d 173, 360 N.E.2d 785; *Taubert v. Fleugel* (1970), 122 Ill. App. 2d 298, 258 N.E.2d 586.

The result of the court's actions in this case will be that the servient land owners, the Pontons, will be required again to accept drainage from the Browns' properties, as was the natural drainage prior to their various obstructionist procedures. This result is in accord with long-established Illinois drainage law. *Gormley v. Sanford* (1869), 52 Ill. 158, 162; *Templeton v. Huss* (1974), 57 Ill. 2d 134, 311 N.E.2d 141.

For the reasons stated, the judgment of the Circuit Court of Kankakee County is affirmed.

Affirmed.

STENGEL and SCOTT, JJ., concur.